## THE STATE v. KID HOLDEN, Appellant.

### Division Two, May 14, 1907.

1. **APPEALS: Motion for New Trial: Indefinite Assignment.** An assignment in the motion for new trial that the court erred in admitting illegal and irrelevant testimony, is not sufficiently definite; and the appellate court will not go through the record to discover such testimony.

2. **INSTRUCTION: Limiting Time: Harmless Error.** An instruction which limits the time of the commission of the offense to the year 1906, instead of three years prior to the time of the filing of the information, is an error in defendant's favor, of which he can not complain.

3. **GAMBLING: Crap Table: Sufficiency of Evidence.** Evidence held sufficient to support the verdict finding defendant guilty of setting up and operating a crap table for the purpose of playing games of chance for money and property.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray*, Judge.

AFFIRMED.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

(1) The evidence, and all the evidence, showed that the crime charged was committed during the month of February, 1906, and prior to the filing of the information, which was February 26, 1906. So the jury could not possibly have been misled; neither was it possible for defendant to have been convicted of any crime committed prior to the time limited by the statute in such cases. (2) The simple statement of the facts is sufficient to convince any one of the guilt of defendant; for, had defendant not been guilty, he never would have been in the position in which he was found on that Saturday night, surrounded by the persons, tables and devices described by the witnesses. State v.

Miller, 190 Mo. 449; State v. Cronin, 189 Mo. 663; State v. Locket, 188 Mo. 415.

BURGESS, J.—On February 26, 1906, the prosecuting attorney of Jasper county filed an information, and on March 6, 1906, he filed an amended information, duly verified, by which he charged that the defendant, on the —— day of February, 1906, feloniously did set up, keep and operate a certain table and gambling device, commonly called a "crap table," which table was adapted, devised and designed for the purpose of playing games of chance for money and property. Defendant was tried on March 13, 1906, and convicted, and his punishment assessed at twelve months in the county jail. After filing formal motions for new trial and in arrest of judgment, which were overruled, defendant appealed.

The State's evidence tended to prove that Sheriff Marrs, Deputy Sheriff Marquiss and Deputy Sheriff Kier raided a certain room in the second story over the Woodbine saloon in the city of Joplin on one Saturday night in the month of February, 1906. Prior to forcing their way into said room, these officers went up an alley, climbed over a fence and got up on a flat roof of a one-story building and looked into the windows to see what was going on in said room. They saw a number of people up there, including the defendant, who were engaged in gambling. The defendant was standing behind a crap table dealing craps, and several others were around the table on the outside, rolling two dice across the table. The defendant was paying the bets and cashing in the checks. The others were standing on the outside of the table and were placing their checks down on the table and rolling the dice. The table was identified by the officers as what is commonly termed a crap table, and was about four feet high with a railing around it about four or five inches high, and was eight

feet long by three feet wide and covered with a green cloth. On one side of the table, about the center thereof, there was a little space cut out, and in this space the defendant was standing while the game was in progress. On this table were numbers corresponding with numbers that can be made on a pair of dice, and on this particular table were 4, 5, 6, 8, 9, and 10. The word "come" was also printed on the table, and this word is one that is used by gamblers in playing said game of chance. Dice were also found in the drawer of the table, and the defendant was seen watching the dice as others would throw them, and throwing them back to the player. The defendant was also seen dealing certain colored checks, round flat checks, which he gave in exchange for money. The officers further testified that the table which the defendant had charge of was the character of table devised, designed and made for playing the game of craps, and was commonly termed a "crap table."

The defendant introduced Burt Mann and A. M. Davis, who testified that they resided in Joplin, and were in this room the night that the officers raided the game. They also testified to their acquaintance with the game called "craps," and also to their acquaintance with the game called "klondike;" that the table identified and offered in evidence was the kind of table upon which the latter game was played, and that the defendant had no connection that night with the crap table, but was standing behind the "klondike" table. They further testified that the crap game was played with two dice, and that the dice offered in evidence were regulation dice. Mann, however, admitted that he was not at this crap table when the sheriff and his deputies came in, and hadn't been that evening, although he was "supposed to know" what was going on in that room that night; and Davis said, in explaining the use of the table, "We never used it as a crap table." When asked

whom he meant by "we," he replied that he meant the defendant in this case. For some reason, presumably a good one, the defendant did not testify in this case.

In rebuttal, the State produced the record of the circuit court of Jasper county, showing that defendant's witnesses, Burt Mann and A. M. Davis, were under arrest charged with being the keepers of and with running a gambling table in the same house on the night of the arrest of defendant, Kid Holden.

The defendant is not represented in this court. The amended information is properly verified, and complies with the statute and approved forms. [Sec. 2194, R. S. 1899; State v. Locket, 188 Mo. 415; State v. Rosenblatt, 185 Mo. 114.] There was, therefore, no error in overruling the motion to quash.

One of the errors assigned in the motion for new trial is the action of the court in admitting illegal and irrelevant testimony, but what particular testimony the motion has reference to we are not advised, nor do we know. The motion is entirely too indefinite, and we are not disposed to go through the record and take upon ourselves the burden of discovering, if perchance we could, the said illegal or incompetent testimony. It would have been easy to indicate in the motion or by brief the particular testimony complained of, which was not done.

It is also asserted in the motion that the court erred in its instructions for the State, but after carefully reading them, we are unable to discover anything objectionable in any of the instructions excepting possibly in the second. It is as follows:

"The court instructs the jury that if they find and believe from the evidence in this case that the defendant, at the county of Jasper and State of Missouri, in the year 1906, or at any time therein prior to the 26th day of February, did wilfully, unlawfully and feloniously keep a certain gambling device and table, com-

monly called a crap table, and that the same was then and there a gambling device, adapted, devised and designed for the purpose of playing games of chance for money and property, and that the defendant did then and there unlawfully, wilfully and feloniously entice, induce and permit certain persons to bet and play at and upon a game played at and by means of such gambling device, and for which the same was adapted, devised or designed, on the side and against the keeper thereof, then you will find the defendant guilty and assess his punishment at imprisonment in the penitentiary for a term not less than two nor more than five years, or by imprisonment in the county jail for a term not less than six nor more than twelve months."

While this instruction is subject to verbal criticism, we do not think it misleading, confusing or erroneous. It limits the jury not to the three years next preceding the date of the filing of the information, but to the year 1906, while the information was filed in March, 1906; so that if there was any error in the instruction, it was in favor of the defendant, of which he has no right to complain.

The evidence showed very conclusively that defendant was guilty as charged. The judgment is affirmed.

All concur.