E. H. BRADBURY v. F. H. CRITES and UNITED STATES FIDELITY & GUARANTY COMPANY, Appellants.

Division Two, February 26, 1926.

1. **REFERENCE: Action at Law: Substantial Evidence: Appellate Practice.** A suit by a contractor against the subcontractor and his surety for damages for breach of contract by abandonment of the work is an action at law; and if it is referred to a referee to take the testimony and report to the court, and his report is confirmed by the court and judgment is rendered in accordance therewith, his findings of fact, confirmed by the court, occupy the same status on appeal as the verdict of a jury, and will not be disturbed if supported by substantial evidence.

2. ———: **Supplemental Report: At Subsequent Term.** It is not error to permit the referee to file a supplemental report at a term of court subsequent to the term at which the original report was filed, where the referee, through oversight, overlooked and failed to report some of the proceedings before him, and the supplemental report simply

Bradbury v. Crites.

supplied those omissions, and appellants (a) made no timely objections to its filing; (b) did not complain of its untimely filing in their motion for a new trial, and (c) they filed objections to both reports which were considered before judgment was entered.

3. **DAMAGES: Breach of Contract: Public Improvement: Retention by Contractor of Ten Per Cent Protection from Amount Due Subcontractor.** Plaintiff had a contract with the city for the construction of a storage basin, by which the city was to retain ten per cent of the estimated value of the work done at each installment payment. He entered into contract with defendant to do the concrete work at a named price, in accordance with the terms set out in plaintiff's contract with the city and the plans and specifications therein detailed, and a surety company executed to plaintiff a bond for the faithful performance of the subcontractor's agreement. At the first installment payment, the contractor received from the city the correct estimate of the value of the work done by the subcontractor, less ten per cent, and turned over the entire amount to the subcontractor; at the next installment, the contractor received again from the city the estimated value of the work done by the subcontractor, less ten per cent, and turned over to the subcontractor the amount, less ten per cent thereof, and less ten per cent of the amount paid to the subcontractor upon the previous estimate. The subcontractor contended that he was entitled to the entire amount paid by the city to the contractor on both estimates, and disputed the right of the contractor to retain ten per cent of the estimated value of his work until the work was fully performed, and because only ninety per cent of the estimated value of the work done by him and received by the contractor was paid to him claimed that the contract with him was breached, and quit the work, and the contractor took over the concrete work and completed it, and then sued the subcontractor and surety company for damages. The contract between the contractor and the subcontractor was obscure on the point. *Held*, that the subcontractor breached the contract, and plaintiff is entitled to recover the amount of his damages from the subcontractor and the surety company.

Appeal and Error, 3 C. J., Section 767, p. 873, n. 31 New; Section 863, p. 967, n. 42; Section 1585, p. 1409, n. 28; 4 C. J., Section 2865, p. 894, n. 894, n. 56; p. 895, n. 57. Contracts, 13 C. J., Section 986, p. 780, n. 39. References, 34 Cyc., p. 847, n. 6. Tender, 38 Cyc., p. 178, n. 6. Principal and Surety, 32 Cyc., p. 112, n. 20 New; p. 138, n. 42.

Appeal from Jackson Circuit Court.—*Hon. Charles R. Pence*, Judge.

AFFIRMED.

*Davis & Woodruff* for appellant F. H. Crites; *R. E. Ball* for appellant United States Fidelity & Guaranty Company.

(1)   The court erred in permitting the referee to file the so-called "supplemental report" at a subsequent term of court to the filing of the original report.   The court should have sustained exceptions 52 and 53 to the original report of the referee, which were exceptions to the failure of the referee to make a complete report.   Art. 14 Chap. 12, R. S. 1919; Sec. 1441, R. S. 1919.   (2)   Bradbury's failure to pay Crites under the second estimate constituted a breach by Bradbury and justified Crites in quitting work. 9 C. J. 833; Bean v. Miller, 69 Mo. 384; Weber Chimney Co. v. Paper Co., 199 S. W. 143; Carlin Const. Co. v. Stone Co., 241 Fed. 545; U. S. Fidelity Co. v. Contr. Co., 263 Fed. 283.   (3)   The evidence absolutely fails to support the allegation of the amended petition and the finding of the referee that defendant Crites quit and abandoned the construction work on August the 14th, and the exceptions to this finding of the referee should have been sustained by the trial court.   (4)   Before Bradbury is entitled to recovery on his petition it must appear that his offer to pay $2781.80 under the second estimate was a clear legal tender under the terms of the written contract sued on. 13 C. J. 662; 9 C. J. 833; Williston on Contracts, sec. 32, et seq., and particularly Sec. 882; Browning v. Ry. Co., 188 S. W. 143; Curtis v. Sexton, 142 Mo. App. 179; Cornett v. Best, 151 Mo. App. 546; Gerle v. Silk Mfg. Co., 57 N. J. L. 432, 30 L. R. A. 61; Wells, Fargo & Co. v. Page, 48 Ore. 74, 3 L. R. A. (N. S.) 103, and note.   (5)   The offer of Bradbury to pay $2781.80 under the second estimate finds no justification in the written contract.   (6) The evidence does not support the finding of the referee that at the conference on August the 19th Crites refused to go ahead with the work unless Bradbury would agree to pay for the steel.   (7)   The evidence does not support

the finding of the referee that Crites was obligated to
pay for the re-inforcing steel that went into the concrete
work.   (8)   The evidence does not support the referee's
finding against Crites on his counterclaim.   Under the
evidence Crites is entitled to judgment against Bradbury
for $6856.05 with interest from the 21st day of August,
1919.   (9)   The report of the referee and the judgment
in support of it is based on a finding of agreements be-
tween Bradbury and Crites entirely outside of and dif-
ferent from the written contract sued on, and consequently
the court erred in following the recommendations of the
referee and rendering judgment against Crites, the prin-
cipal, and particularly as against United States Fidelity
and Guaranty Company, the surety on the bond sued on.
Woodruff v. Schultz, 16 Ann. Cas. 346; First Nat. Bank
v. Fidelity Co., 8 Ann. Cas. 241, 145 Ala. 335; Prairie State
Natl. Bank v. United States, 164 U. S. 227; American
Bonding Co. v. Pueblo Inv. Co., 10 Ann. Cas. 357; Lyons v.
Kitchell, 37 Ann. Cas. 671; Reissaus v. Whites, 138 Mo.
App. 135; School District v. Green, 134 Mo. App. 421;
Evans v. Graden, 125 Mo. 72; Blanke Bros. Realty Co. v.
American Surety Co., 247 S. W. 797; Cochran v. Ins. Co.,
271 S. W. 1011; Martin v. Ins. Co., 276 S. W. 380.   (10)
The referee and the court below erred in refusing Instruc-
tion 1 asked by appellant Guaranty Co., and in refusing
Instruction 1 asked by appellant Crites in the nature of a
demurrer to all the evidence heard and produced in the
case.   (11)   Appellants also assert, the Guaranty Co. in
its motion for a new trial and in its motion in arrest of
judgment, and appellant Crites by his motion for a new
trial, that the court below by its judgment deprived ap-
pellants, and each of them, "of due process of law" (Mo.
Constitution, art. 2, sec. 30; U. S. Constitution, Amend-
ment 14, sec. 1), and impaired appellants' right of con-
tract (U. S. Constitution, art. 1, sec. 10), and deprived
said appellants, and each of them, of the equal protection
of the laws (U. S. Constitution, Amendment 14, sec. 1),
within the true meaning and intent of said sections of said
State and Federal Constitutions.   Right to contract:

Prudential Ins. Co. v. Cheek, 259 U. S. Right to sue: Lamb v. Powder River Co., 132 Fed. 434; U. S. Complied Statutes, sec. 1214; Abott v. Bank, 175 U. S. 409.

*Grant I. Rosenzweig, Charles E. McCoy* and *Harry H. Howard* for respondent.

(1) Appellants' objection to the filing of supplemental report by the referee, not having been taken at the time of filing, nor raised in either of their motions for new trial and arrest of judgment, but raised first on appeal, is untimely and cannot now be heard. The court had jurisdiction of the whole cause of action at the time of the filing of the supplemental report and had jurisdiction to make the order requiring the referee to file certain exhibits which had been introduced in evidence before the referee, and certain declarations of law requested by the plaintiff. (2) Appellants misconstrue the evidence under their Point 2. After Crites had quit and abandoned the performance of his contract on August 14th and further repudiated his contract on August 19th there was no obligation on Bradbury to pay or to make tender of payment under the second estimate. Authorities under Point 4. (3) The evidence is overwhelming in support of the referee's finding that Crites quit and abandoned the construction work on August 14th. The referee's report was approved by the circuit court, and this court cannot disturb that finding, there being more than substantial evidence to support the finding. State v. Wilson, 232 S. W. 144. (4) After Crites had quit and abandoned the construction work called for under his contract on August 14th, and after Crites had formally repudiated his contract on August 19th by demanding an additional payment for steel of some $8,000 in addition to his contract price, and refusing to proceed with the construction work called for in his contract unless Bradbury paid for the steel in addition to the contract price, there was no obligation on Bradbury to make any legal tender of any amount. Ramlose v. Natl. Surety Co., 100 Mo. App. 364;

Laswell v. Handle Co., 147 Mo. App. 535; Holden v. Lyons, 175 Mo. App. 165; Smith v. Lamb, 26 Ill. 396; Kuhlman v. Wielen, 129 Iowa, 188; Harwood v. Diemer, 41 Mo. App. 48; Deichman v. Deichman, 49 Mo. 107; Fibre Co. v. Aaron Poultry Co., 176 Mo. App. 26. (5) The offer of Bradbury to pay $2,781.80, and his further offer to pay the additional ten per cent which had been deducted, was in compliance with the terms of the contract for payment under the second estimate, though there was no obligation on Bradbury to pay or make tender of payment under second estimate after Crites had quit work on August 14th, and formally repudiated his contract on the 19th. (6) The report of the referee and the judgment rest upon the contract sued on, the performance of which the Guaranty Company guaranteed, and no other agreements are involved. Bank of Commerce v. Mill & Elev. Co., 268 Mo. 547; State ex rel. v. Surety Co., 187 Mo. App. 50; Lackland v. Surety Co., 256 Mo. 145. (7) There are no constitutional questions involved, and if there were, the same having been raised for the first time in appellants' motion for new trial, were out of time. Hartzler v. Met. St. Ry. Co., 218 Mo. 562; Sheets v. Ins. Co., 226 Mo. 613.

RAILEY, C.—This action was commenced in the Circuit Court of Jackson County, Missouri, on May 7, 1920. Thereafter a first amended petition was filed, upon which the cause was tried. It alleges, in substance, that on May 1, 1919, plaintiff, E. H. Bradbury, entered into a written contract with Kansas City, Missouri, for the construction of a 15,000,000-gallon storage basin, in accordance with the terms set out in said contract, and the plans, details and specifications in connection therewith; that plaintiff sublet the plain and reinforced concrete part of the work to defendant F. H. Crites, by written contract dated May 27, 1919, for $34,000, by which Crites agreed to furnish, at his own expense, all labor and materials therefor, and to build all the plain and reinforced concrete required by the city contract; that by express terms said city contract, with plans, specifications and drawings,

was made an integral part of the Crites contract, to govern him; that by the Crites contract Bradbury was to pay Crites, as he received payment from the city, under the latter's contract with plaintiff. (Both the Crites and city contracts are set out in said petition.)

It is alleged that, prior to the execution of the Crites contract, the latter had agreed to furnish plaintiff a surety bond for the faithful performance of requirements and, on July 14, 1919, Crites, as principal, and the United States Fidelity & Surety Company, as surety, delivered to Bradbury a bond for $20,000, on which Bradbury paid the premium; that by the terms of said bond, the Surety Company agreed to indemnify Bradbury from loss due to failure of Crites to perform his contract. (This bond is set out in the petition.) That Bradbury furnished the equipment mentioned in the Crites contract; that he paid, and offered to pay, within the proper time, all payments due Crites, and that he had complied with all the terms of the Crites contract; that in due time Crites purchased and assembled at the site of the basin, cement, rock, sand, steel and other necessary materials and equipment; that he employed labor and began to build, but wrongfully abandoned said work on or about August 14, 1919, since which time, he has refused to proceed with said work; that Kansas City, on August 20, 1919, gave Bradbury notice to remove Crites, under Article 3 of the city contract; that due notice of the above was given by Bradbury to said surety; that thereafter Bradbury took over the work, completed it in accordance with the city contract and, in doing so, necessarily expended certain sums; that the reasonable value of the work and labor done, and the materials furnished, which, after giving proper credits, left a balance due to plaintiff of $21,786.76, as detailed in an account, attached as an exhibit to the petition, covering thirty-one pages. The petition concludes with a prayer for judgment against defendant Crites in the sum of $21,786.76, and judgment against said surety for $20,000, etc.

The amended answer and counterclaim of defendant F. H. Crites, in substance, admits, that plaintiff made the contract aforesaid with Kansas City as set out in the amended petition. He admits that on or about May 29, 1919, he and plaintiff executed the contract described in petition. He admits that he procured the necessary materials and began to construct the plain and reinforced concrete work called for in said contract. He avers that he continued such construction work until on or about the 14th day of August, 1919; that he did not quit and abandon said work on said date, nor did he ever quit and abandon the same voluntarily. He denies that plaintiff continued to meet the payments due this defendant under the contract aforesaid, and denies that plaintiff complied with the terms and conditions of said contract. He avers that plaintiff failed and refused, after repeated demands upon him by this defendant, to make the payments due him under said contract; that by reason of said refusal and failure to make such payments, this defendant was compelled to and did discontinue such construction work; that the notice to plaintiff, and the requirements of the city mentioned in the petition, were occasioned by, and resulted from, the discontinuance of said construction work by defendant as he had the right to do, because of the refusal of plaintiff to make said payments and comply with his contract with this defendant. He denied all the allegations of the petition, except those specifically admitted to be true.

The second count of said answer and counterclaim refers to plaintiff's contract with the city and his contract with this defendant, dated May 27, 1919. He then cites section 7 of the city contract providing for monthly estimates by the city on the work, and proportional payments to Bradbury based on the schedule of prices in the Bradbury proposal, less a deduction of ten per cent held back by the city as a protection against less than a full performance by Bradbury. It is averred that under this provision, after a large amount of work had been done by this defendant, Kansas City, on August 2, 1919, made an

estimate covering work done, including work by Crites, and paid Bradbury in accordance therewith; that Bradbury refused, after request, to pay this defendant the proportion payable for his portion of the work, within the estimate, and wrongfully offered to pay this defendant a smaller sum; that by reason of the foregoing, this defendant discontinued the work, but notified plaintiff he would proceed with same if plaintiff would pay him in accordance with their contract; that plaintiff refused to pay as aforesaid and refused to let Crites continue the work; that plaintiff took over the work, materials and supplies furnished by Crites on the job, including his tools and equipment. He claimed damages in the sum of $6,856.05, as shown in a statement attached to said answer.

The United States Fidelity & Guaranty Company filed an amended answer, denying the allegations of the petition, and adopted the amended answer of defendant Crites.

Plaintiff, in his reply to the amended answer of the Guaranty Company, denied all the allegations contained therein. He further alleged, that without his knowledge and consent, defendant Crites wrongfully discontinued work under his contract with plaintiff: on August 14, 1919, and at all times since said date has refused to complete the same, unless plaintiff, in addition to payment of the full price of $34,000 called for in said contract, would also agree to pay Crites a further sum of $7,815.04, representing the cost of steel which had been purchased by defendant Crites, on his own behalf, under his contract with plaintiff, as part of the materials necessary in the construction of said reinforced concrete work, etc. Plaintiff filed a similar separate reply to the amended answer of defendant Crites.

On March 25, 1921, on motion of plaintiff, this cause was, by order of the Assignment Division of the Jackson County Circuit Court, at Kansas City, Missouri, referred to Mr. Milton Schwind, as referee, under the provisions of Chapter 12, Article XIV, Revised Statutes of Missouri, 1919.

On February 25, 1922, the above referee, after having heard the testimony, etc., in this cause, filed in the circuit court his report, which is set out in the abstract.

It appears from the record that, among other documents offered in evidence by plaintiff, were three contracts. The first, was prepared by defendant Crites and is dated May 27, 1919, but was not signed by either plaintiff or Crites. It was delivered by the latter to plaintiff, and refers to the proposed contract between said parties. The second, was the contract and specifications between plaintiff and Kansas City covering the work in question. The third, was the contract between plaintiff and defendant Crites relating to said work.

The foregoing contracts were offered in evidence by plaintiff, and testimony running through a record of 850 pages was taken by the referee relating to the issues between the parties hereto. The referee made his report to the circuit court and, as it clearly sets out the issues between the parties, with his findings in respect to same, we here set out a part of said report, as a statement of the case, to-wit:

## "Statement.

"The issues which are required to be determined will be stated in connection with the following narrative of the facts. Bradbury obtained a contract from the city to build a large storage basin in the northeast part of the city. The work entailed the removal of a large quantity of earth, as well as the construction of extensive concrete foundations and walls. The city's contract with Bradbury incorporated details, plans and specifications amply exhibiting the requirements of the completed structure. Bradbury intended personally to do all the work of excavation, but entered into negotiations with Crites to do the concrete portion of the construction. The contract dated May 27th and signed July 14th, is the written evidence of their agreement. Long prior to the actual signing of the contract Crites appears to have been actively engaged in construction work. Under Clause 7 of the city

contract an estimate was made by the city, dated July 9, 1919. It covered the work from commencement to and including June 30th, and covered the work done both by Crites and Bradbury. The amount payable to Bradbury after the deduction of the ten per cent was $10,826.44. The proportion of this sum representing cement, rock, sand and steel, after deduction of ten per cent, was $8494.59. The steel item was for 251,505 pounds, amounting to $7815.04, before deduction of the ten per cent. Another item in the estimate was 20.5 cubic yards of toe wall, amounting, after deducting the ten per cent, to $41.98. On the basis of this estimate, Bradbury paid to Crites $8536.-57, which was the amount the city paid for Crites's work. Before making the payment, he required of Crites a bond. The difference between them as to whether a bond was to be given was merged in the act of giving it, Bradbury paying the premium. The signing of the Crites contract, the execution and delivery of the surety bond, and the first payment to Crites, were all transactions of July 14th.

"Section 3 of the city contract provides that a subcontractor under Bradbury shall as to the city be no more than an employee of Bradbury's, and that Bradbury would remove any employee of his on request of the city for incompetency, neglect of duty or misconduct, or whenever for any reason such employee (or sub-contractor) should not be acceptable to the city. That contract also provides (Section 9) that if Bradbury shall fail to prosecute the work with sufficient force, the city should have the option to serve notice on Bradbury forthwith to supply the necessary force, and if he continued in default for ten days after service of such notice, the city should have the option either to supply the additional force necessary, deducting the cost from payments then or thereafter to become due to Bradbury, or to forfeit his contract and take over the work.

"The city contract with documents incorporated therein clearly contemplates that Bradbury deliver to the city a completed basin, material as well as labor, for the price therein stipulated to be paid.

"On August 19th an interview, involving, with its ramifications, important issues herein, occurred at the office of Crites, a narrative of which required a further statement of pertinent facts.

"On August 18th, the city delivered to Bradbury its second estimate covering the period to August 1st for concrete work only, as follows:  48.95 cubic yards of plain concrete, $489.50, less ten per cent, leaving $440.55.  From this the city deducted the item for toe wall, namely, $41.-98, which had been paid to Bradbury and by Bradbury to Crites on the first estimate, leaving net due for plain concrete $398.57, also 390.34 cubic yards of reinforced concrete wall, amounting to $7416.46.  From this likewise there was a deduction of credits to the city of amounts paid on the first estimate as follows:

"Cement, ......................... $1369.94
Sand, ............................    118.45
Rock, ............................    135.00
Steel, ...........................   1719.92

or a total of $3342.21, from which the estimate indicated the fact that the city had on the first estimate deducted $334.33, being the ten per cent, leaving as a net credit claimed by the city on account of these items previously paid for of $3008.98, leaving a balance due for reinforced concrete of $4407.48, subject to be reduced by the ten per cent, or $3966.71, which sum added to the $398.57, indicated the sum due to Bradbury at $4365.28.  This sum was paid to Bradbury about August 14th, on which day Crites quit the work under his contract, for the reason, as he says, that after repeated demands upon Bradbury, the latter failed and refused to make payments due to him.

"Now to return to the interview of August 19th. Bradbury and his attorney, McCoy, went to the office of Crites on the morning of that day.  They took with them and produced at the interview a statement on the basis of which Bradbury was ready to pay Crites $2781.80, arrived at in this way:

312 Mo. Sup.—45.

48.95 yards of toe wall, at $8.25 per yard
(the city's figure to Bradbury was
$10.00) making ..................... $403.84

390.34 yards of reinforced wall, at $14.70
per yard (the city's figure was $19.00)
making .......................... $5378.00

or a total payment to Crites (less deduc-
tions noted below) of ............. $6141.84.

From this amount Bradbury proposed to deduct payments included in the check to Crites of July 14th, for $8536.57. These items covered sand, cement, rock and toe wall at the exact figures stated in the first estimate of the city, before deducting the ten per cent and restated as credits claimed by the city in its second estimate, after deduction of ten per cent. The item of steel was given in Bradbury's statement to Crites at $1719.92. The total of all the items, including that of steel, aggregated $3389.95, from which Bradbury deducted the ten per cent retained by the city, thus arriving at the true amount previously paid to Crites, reducing the net credit to $3050.96, which taken from the Crites credit of $6141.84, made the sum of $3090.88, and from this last named sum Bradbury proposed a further deduction of ten per cent to be retained by him, showing due to Crites out of the second estimate $2781.80, as against the sum received by him on the same estimate from the city, namely, $4365.28.

"The versions of this interview as given in the testimony on behalf of Bradbury and on behalf of Crites vary in important particulars hereinafter stated in connection with the conclusions reached by me after careful consideration of the evidence.

"At the conclusion of the interview, Bradbury wired to the surety company that Crites had stopped work on the 18th, and refused to proceed; that payment due him under the second estimate had been tendered and refused, and that he claimed he was not to pay for the steel. The message also stated that it was imperative that work proceed, and asked for instructions. On August 20th the surety stated to Bradbury that it declined to take part in the controversy between Bradbury and Crites, which ap-

peared to be a dispute as to the interpretation of the Crites contract, and waived its right to take over and complete the contract. By a notice to Bradbury on August 20th, the city claimed that for five days there had been no work done on the basin, that the city understood that work had stopped because of some misunderstanding between Bradbury and Crites, and called attention to Section 9 of the city contract, stating that unless the work proceeded within the time limit fixed by that section, the city would take over the work. On the same day the city in a letter to Bradbury, quoting the provisions of Section 3 of its contract, and stating that Bradbury had advised that Crites had quit work, required him to remove Crites, and proceed with the work with due diligence, or the city would take the work over under Section 9 of its contract. On August 21st, Bradbury in a letter to the surety, stated that he had received the two notices from the city, enclosing copies, and that he would forthwith take over the work. On August 21st, Bradbury directed a letter to Crites, stating that he had received the two notices from the city, and that on account of Crites's refusal to proceed with the work, in accordance with the notices, copies of which were attached to the letter, Bradbury would take over and complete the work, and would hold Crites and the surety liable for the damages. This letter was not delivered to Crites, but to Mr. Davis, of the law firm of Davis & Woodruff, who, shortly after August 19th, were retained by Crites as his attorneys. On August 22nd, Crites wrote a letter to Bradbury, in response to the letter delivered to Davis, stating that he was and had been at all times ready to proceed with the work when he received payments due him in accordance with the two estimates; that he was willing to submit the difference between them as to who should pay for the steel to arbitration, to be had within a week from date. On August 23rd, Crites sent a letter to Bradbury, stating that he had learned from the city engineer the amount due him for his work on the first estimate long after Bradbury had paid Crites on that estimate, as calculated by Bradbury, and that not until August 22nd did he know the amount

allowed for his work on the second estimate. He refers to
Section 9 of the city contract, and states that the city
could not take over the work until the expiration of the
ten-day time limit; he offers to proceed with the work if
paid the two estimates previously allowed, and renews his
offer to arbitrate the difference between them as to who
should pay for the steel. Bradbury made no response to
these letters, taking over the work and completing it, as
hereinafter stated.

"At the hearing Bradbury's testimony, corroborated
by McCoy, was that at the interview with Crites on Au-
gust 19th, Crites, without objecting specifically to the cor-
rectness of the statement on the basis of which Bradbury
proposed to pay Crites on the second estimate, noticed the
item of steel in the sum of $1719.92 (less ten per cent)
among the deductions, and promptly stated that he
(Crites) was not to pay for the steel. This was the first
Bradbury had heard of such a claim. On this phase the
interview proceeded to the point where Crites stated plain-
ly that he would not proceed unless his contention as to
the steel was conceded by Bradbury. He likewise pro-
tested the retention by Bradbury of ten per cent ($309.08),
as against him, to which Bradbury's response was that
that would be paid if the surety consented. Crites's tes-
timony, in which he is corroborated by two witnesses, is
that his contention that Bradbury was chargeable with
the steel was suggested by McCoy at the outset, to which
Crites assented, saying that that had always been his
understanding of the contract, and accorded with his in-
tention; that he objected to the amount offered because
it was not as much as the city had paid for his part of the
work, and suggested that the dispute as to the steel could
be settled by arbitration; and said he would take the
$2781.80 as part payment if the difference between that
amount and all the city had paid for his work were paid
within a few days. To this Bradbury refused to assent,
and the interview terminated.

## "IV.

"(1)  By his contract, Crites obligated himself to build all plain and reinforced concrete work shown on the plans and provided for in specifications and in accordance with the conditions of the city contract for $34,000. To build a concrete basin may mean that the builder should supply both the labor and material or only the labor.  In either event, he could be said to build.  The term is ambiguous.  The question arose early at the hearing.  I admitted testimony which tended, as I believed, to make plain whether as between Bradbury and Crites, the latter's obligation was to furnish the materials, including steel, as well as the labor, necessary to produce the result in view, namely, a concrete basin as defined in the city contract.  On the evidence, I find that by the provision requiring Crites to build, the minds of the parties met, and that both meant and understood that Crites in the execution of the contract should supply the labor and the materials, including the steel, at the gross sum stipulated.

"(2)  I find that on August 14th, Crites had discontinued operations on the basin under his contract, and that he did not thereafter resume operations thereunder, and that on August 19th, his intention was not to take up and continue the work again unless Bradbury would concede his claim that under their contract it was Bradbury's obligation to pay for the reinforcing steel.

"(3)  By the Crites contract, Bradbury obligated himself to pay Crites as Bradbury received payment from the city, in accordance with the conditions contained in the city contract.

"As I read this provision, it requires Bradbury to pay Crites the $34,000 payable for full performance in installments.  Each successive installment payable to Crites is due and payable when and as soon as Bradbury has received an installment from the city on account of work done by Crites.

"By what standard is the amount to be determined? On the first payment Crites received from Bradbury the precise amount received by the latter from the city. On the second payment Bradbury proposed to pay a proportion of what he had received from the city on the same account. This proportion bore the same relation to $34,000 which the partial performance of Crites bore to full performance. According to this method, Crites would receive full payment for the work done at the date of each payment on the basis of his total compensation, being neither overpaid nor underpaid. His contention was that he should receive all that Bradbury had received from the city. So he contended on August 19th.

"(4)    The matter is to be determined by reference to the contract, independently, I think, of the fact that Bradbury paid the full amount on the first payment. It is wholly a matter of construction. Viewing the contract as a whole, a construction warranted by its terms and subject-matter, and which accords with reason and business sense, is that Bradbury obligated himself to pay Crites in installments, as he received his installments from the city, the installments to bear the same relation to full compensation which the part performed at the date of payment bore to full performance. Men do not expect to pay or to be paid in advance for service of the kind here involved. Crites knew the provisions of the city contract and the total compensation to be paid Bradbury. To say that the act of the city in placing a unit value on the work of Crites, as embraced in the estimates made by the city as a basis for periodic payments to Bradbury, should fix the proportion paid Crites, would be arbitrary and not rational. It is proper to give the words of the contract a reasonable rather than an unreasonable construction. The words used admit of this construction, and it gives to neither party an unfair advantage over the other. It puts Crites under the same limitation as to periodic payments from Bradbury as that under which Bradbury took his payments from the city.

## "V.

"(1)   By the Crites contract, Bradbury obligated himself to pay Crites as Bradbury received payment from the city in accordance with the conditions of the city contract.

"(2)   The city contract saved to the city the right to retain ten per cent of each payment to Bradbury. On the two payments made to him, it retained this ten per cent. Bradbury, in making the first payment to Crites, made no deduction. On the second payment, he proposed to deduct ten per cent.

"(3)   I find the fact to be that on August 19th, Crites objected to the retention of this ten per cent by Bradbury on the second payment, and that Bradbury said he would pay this ten per cent if the surety would consent.

"(4)   It was the theory of Crites, as indicated in his testimony, that the ten per cent retained by the city was ten per cent of his own compensation, and therefore constituted that protection against default which is admittedly the sole object of such provisions. While this accords with his other claim that Bradbury owed him on each payment all that Bradbury had received from the city, it is, in my opinion, an erroneous view, in that the city contract fixes Bradbury's compensation, whereas the Crites contract fixes Crites's compensation. The retention of ten per cent, to the extent that it protects against less than full performance, would have to be out of the total compensation of the one in default. By the Crites contract, Bradbury obligated himself to pay Crites as Bradbury received payment from the city in accordance with the conditions of the city contract; that is to say, the conditions imposed by the city in respect of payments to Bradbury should attach to Bradbury's payments to Crites. One of these conditions was the retention of a percentage of the amount earned. The words used in the Crites contract warrant the reasonable construction that Crites should not be in a more favorable position in respect to

periodic payments against Bradbury than Bradbury
would at all times be in as against the city.

"(5)   I accordingly conclude that on August 19th,
the offer of Bradbury to pay on the basis of the statement
then presented, as previously indicated herein, constituted
full performance on Bradbury's part with respect to pay-
ments, notwithstanding he proposed to retain ten per cent
of the amount by such statement shown to be due.

"(6)   In my opinion, however, the evidence amply
warrants the conviction, and I so find, that the contention
of Crites then made that under his contract Bradbury was
obligated to pay for the steel out of his own funds, thus
increasing by the cost of the steel which entered into the
construction the total compensation to Crites, was final
and unalterable.

"(7)   In my opinion, likewise, the evidence warrants
the conviction, and I so find, that the contention of Crites
then made that under his contract Bradbury was obligated
to pay him on each installment all that the city had paid
to Bradbury for the work done by Crites was final and
unalterable.

## "VI.

"On the basis of the foregoing findings, and the con-
structions which I have placed upon the Crites contract,
my conclusion is:

"(1)   That on August 19th, the position assumed by
Crites with respect to the steel and the measure of pay-
ment due to him from Bradbury each amounted to a repu-
diation of the contract between him and Bradbury, and
justified Bradbury in taking over the work of completing
the storage basin under his contract with the city.

"(2)   That Bradbury is entitled to recover against
Crites in this action the reasonable value of labor and
materials necessarily expended and supplied in the busi-
ness of completing the construction of the basin; less cer-
tain credits and deductions hereinafter indicated.

"(3)   That Crites should recover nothing on his
counterclaim.

## "VII.

"The sum in which, as I find, Bradbury should recover of Crites I arrive at in the following manner:

"(a)   By making certain additions to correct errors in the computation of the account attached to Bradbury's petition.

"(b)   By making certain deductions from that account; and,

"(c)   By adding certain credits which he omits to give to Crites.

### "1.   Additions to Correct Errors:

"(a)   Under date of November 19th, the total of certain items computed at $21.21, should be $51.21, adding $30.

"(b)   Under date of September 22nd, the total of certain items computed at $52.21, should be $58.21, adding $6.

### "2.   Deductions:

"(a)   The item for crushed rock, August 22nd to March 10th, on the evidence should be for $6,304.37, instead of $6919, subtracting $604.63.

"(b)   Under date of January 19th, an item of $5.40 is not sustained by the evidence, subtracting $5.40.

"(c)   Under date of February 14th, an item of $1 is not sustained by the evidence, subtracting $1.

"(d)   Under date of September 16th, an item for drayage of copper is disallowed, subtracting $2.50.

"(e)   Bradbury charged Crites for personal services for one-half of the time consumed in completing the contract, computed at the rate of $300 for full time for four months, and three days, or $615. There is no evidence of the amount of these services, or their reasonable value, and the item is disallowed, subtracting $615.

"(f)   Bradbury charged Crites with the use of an automobile employed from time to time on the work. There is no evidence of the time for which the car was used, or

of the reasonable value of its use. This item is disallowed, subtracting $88.

"(g)   Bradbury charged Crites with one-half of his office rent for the period covered by the work of completing the contract. This item is disallowed, subtracting $53.75.

"(h)   Bradbury charged Crites with a proportion of the salary which Bradbury paid one of his office employees. This item is disallowed, subtracting $180.

## "3.   Additional Credits to Crites:

"The counterclaim contained in the second count of Crites's answer is for damages, stated in the sum of $6856.05, accruing to Crites because of the wrongful breach, as alleged, by Bradbury of the Crites contract. Bradbury did not breach the contract. From the evidence admitted by me at the hearing in support of the items enumerated in the statement incorporated in the counterclaim, I find that Bradbury, in taking over the work on the basin, took over certain materials, tools and equipment of Crites, and used a hoisting engine and concrete mixer, which were afterwards returned to Crites. As Bradbury's recovery against Crites is upon an account for sums expended, less proper credits, I conclude that in this accounting credits to Crites not given by Bradbury should be allowed in reduction of Bradbury's recovery. Total credits given by Bradbury in his account amount, exclusive of the contract price, to $1254.79. I find that in addition to these credits, Crites is entitled to:

"(a)   Credit for 24870 feet of lumber, at $40 per thousand. Bradbury's credit for lumber is $531.88. He should give additional credit for $462.92.

"(b)   Credit for wire in the sum of $13.65.

"(c)   Credit for nails in the sum of $21.75.

"(d)   Credit for stay rods in the sum of $77.01.

"(e)   Credit for felt expension joints in the sum of $78.21.

"(f)   Credit for gasoline in the sum of $12.50.

"(g)    Credit for coal in the sum of $11.65.

"(h)    Credit for paraffin oil in the sum of $5.

"(i)    Credit for cement sacks in the sum of $228.75.

"(j)    Credit for tools and equipment (listed in the counterclaim at a total of $612.10) in the sum of $588.

"(k)    Credit for rental value of hoisting engine in the sum of $55.

"(l)    Credit for rental value of concrete mixer in the sum of $190.

## "VIII.

"The contentions of the surety company are:

"(1)    That by its bond it indemnified Bradbury from pecuniary loss resulting from the violation by Crites of the terms of the Crites contract, which is free from ambiguity and requires of Crites only the labor and none of the material incidental to the construction of the basin; that it is not bound by any arrangements extraneous to the contract between Bradbury and Crites by which the latter assumed to furnish a part or all of the materials; and that accordingly, the plaintiff's petition stating the legal import of the Crites contract to be an obligation to furnish all the materials and labor is unsustained by the contract in evidence. (2) That it was Bradbury's obligation to pay to Crites all that the city paid to Bradbury on account of the work of Crites. To sustain either contention would be to release the surety from liability herein, for upon either hypothesis, under the evidence, Bradbury would be in default of performance and could not recover.

"(a)    It is my conclusion that the contract bonded by the surety required Crites to build the basin by doing the work and furnishing the materials. This I find to be the meaning of the Crites contract. The obligation of the surety is as broad as that of Crites. Both are bound by the true meaning of the ambiguous contract as that meaning is determined in the light of competent evidence.

"(b)   Bradbury was not in default of full payments due to Crites, for reasons already fully indicated by me.

## "IX.

## "Recommendations.

"The amount claimed by Bradbury in his petition, after deductions of credits conceded by him is $21,786.76. In accordance with the foregoing findings, I add to this $36 by way of correction, and subtract $1540.28 for items disallowed; and adding to his credits the sum of $1744.-44, I arrive at the net balance of $18,538.04, in which sum it is my recommendation that judgment be entered in favor of E. H. Bradbury, plaintiff, and against F. H. Crites and the United States Fidelity & Guaranty Company, defendants; and that F. H. Crites recover nothing on his counterclaim."

Thereafter a supplemental report was made by the referee to certain matters which were, through oversight, omitted from his original report. Exceptions were filed by appellants as to *both* reports and overruled, as shown by the following judgment, dated March 6, 1923:

## "Judgment.

"This cause having been heretofore submitted to the court on the original and supplemental report filed herein by Hon. Milton Schwind, referee, upon the proofs heard by said referee and filed with his said original and supplemental report, on exceptions to said referee's original and supplemental report filed by the defendants, and upon the arguments and briefs of counsel upon said several matters; and the court having duly examined and considered the same, and being now fully advised in the premises:

"1.   Doth in all respects ratify, approve and confirm all of the findings of fact and conclusions of law of the referee herein.

"2.   Doth find the issues made by the counterclaims of the defendants, F. H. Crites and United States Fidelity

and Guaranty Company, in favor of the plaintiff, and that said defendants are entitled to recover nothing thereby.

"3. Doth find the issues made on plaintiff's petition in favor of the plaintiff and against both of said defendants; doth find that defendants have breached the bond sued on herein, and doth assess plaintiff's damages on account of said breaches, as follows:

"On account of moneys paid out by plaintiff to laborers and materialmen in excess of the contract price and in excess of all credits to which defendant Crites was entitled, as found by the referee, amounting to $18,538.04.

"4. Doth overrule each and all of the exceptions filed by the defendants to the referee's original and supplemental report, to which rulings of the court and each of them, defendants and each of them except.

"Wherefore it is by the court considered, ordered and adjudged that the defendants take nothing by their said counterclaims, and plaintiff go hence discharged therefrom, without day; that plaintiff have and recover of and from the defendants, F. H. Crites and United States Fidelity and Guaranty Co. (a corporation) the penalty of their said bond; to-wit, the sum of $20,000, and all of the costs of this suit, and that plaintiff have execution for the damages awarded to him as aforesaid, to-wit: For the sum of $18,538.04, and for all of the costs of this suit."

Separate motions for a new trial and in arrest of judgment were filed by defendants and overruled. Thereafter an appeal was granted said defendants to this court.

Such other matters as may be deemed important will be considered in the opinion.

I. This is an action at law, in which the testimony was taken by a referee, reported to the court, confirmed by the latter, and judgment rendered in accordance with the report and recommendations of the referee. The findings of fact made by the referee and confirmed **Appellate Practice.** by the judgment of the circuit court, occupy the same status on appeal as the verdict of a jury, and such findings will not be disturbed, if supported

by substantial evidence. [Kline Cloak & Suit Co. v. Morris, 293 Mo. l. c. 494, 240 S. W. l. c. 100; State ex rel. Saline Co. v. Wilson, 288 Mo. 315, 232 S. W. l. c. 143; Roloson v. Riggs, 274 Mo. l. c. 528, 203 S. W. 974-5; Johnston v. Star Bucket Pump Co., 274 Mo. l. c. 424; State ex rel. v. People's Ice Co., 246 Mo. l. c. 202.]

II.   It is contended by appellants that the trial court committed error in permitting the referee to file his supplemental report at a subsequent term of court to the filing of the original report.

The circuit court had jurisdiction over the subject-matter of the cause, and likewise over the persons of defendant and the referee. The referee, having through oversight overlooked and failed to report some of the proceedings in the case before him, was properly permitted by the court to supply the missing portion of same. These defendants are in no position to complain of above matter, for several reasons; First, because they made no timely legal objection to the filing of same. Second, because they do not complain of any alleged error of this character, in their motions for a new trial. Third, because they filed objections to both reports of the referee which were determined before judgment was entered in the cause, and which are now the subject of review in this court, if properly presented. The above assignment of error is without merit and overruled.

III.   It is claimed under appellants' second contention of their "Points and Authorities," that:

"Bradbury's failure to pay Crites under the second estimate constituted a breach by Bradbury, and justified Crites in quitting work."

The above assignment is simply the statement of a legal conclusion. No testimony is set out in support of said contention, nor are we referred to any part of the 850 page abstract of record where anything relating to this matter can be found. Under the well-established rulings of this court, it is not our province to search this voluminous record to determine the correctness of above

complaint. [Barnett v. Hastain, 256 S. W. l. c. 753 and cases cited; State v. Yates, 252 S. W. l. c. 644; School Dist. v. Phoenix Land & Imp. Co., 249 S. W. l. c. 54; Maloney v. United Rys. Co., 237 S. W. l. c. 512; Nevins v. Gilliland, 290 Mo. l. c. 300-1, 234 S. W. l. c. 820; State v. Stenzel, 220 S. W. l. c. 884; Hayes v. McLaughlin, 217 S. W. l. c. 264; Christine v. Luyties, 280 Mo. l. c. 431, 217 S. W. l. c. 60; State v. Whitsett, 232 Mo. l. c. 529-30, 134 S. W. 555; State v. Holden, 203 Mo. l. c. 584, 102 S. W. 490.] Aside from the foregoing, the plaintiff produced abundant, substantial evidence controverting the above contention, and the referee found for plaintiff on this issue. The finding of the referee on this subject is conclusive against appellants, under the authorities cited under proposition one supra.

IV. Under proposition 3 of their "Points and Authorities," it is alleged that: "The evidence absolutely fails to support the allegation of the amended petition, and the finding of the referee, that defendant Crites quit and abandoned the construction work on August the 14th, and the exceptions to this finding of the referee should have been sustained by the trial court."

This assignment, like the one in the preceding paragraph, is simply a legal conclusion, does not set out the facts relied on, or show where they may be found in the records. It ignores the direct, substantial testimony offered by plaintiff and sustained by the referee. The finding of the referee, which was confirmed by the court, if sustained by substantial evidence, is conclusive here on this appeal. It is not the province of this court to pass on the weight of the evidence, but simply to determine whether there was substantial evidence sustaining the finding of the referee and judgment entered. The above assignment of error is accordingly overruled.

V. Propositions four, five, six and seven, under appellants' "Points and Authorities," read as follows:

"4. Before Bradbury is entitled to recovery on his petition it must appear that his offer to pay $2781.80 under the second estimate was a clear legal tender under the terms of the written contract sued on.

"5. The offer of Bradbury to pay $2781.80 under the second estimate finds no justification in the written contract.

"6. The evidence does not support the finding of the referee that at the conference on August the 19th Crites refused to go ahead with the work unless Bradbury would agree to pay for the steel.

"7. The evidence does not support the finding of the referee that Crites was obligated to pay for the reinforcing steel that went into the concrete work."

What we have said under propositions three and four supra of the opinion applies with equal force to each of the above assignments. The plaintiff offered substantial testimony supporting his contention as to the matters referred to in above assignments and the referee found in his favor on these issues. Said assignments are accordingly overruled.

VI. It is claimed under proposition 8 of appellants' brief that : "The evidence does not support the referee's finding against Crites on his counterclaim. Under the evidence Crites is entitled to judgment against Bradbury for $6856.05 with interest from the 21st day of August, 1919."

The referee found for respondent in respect to above matters, and his finding is sustained by substantial evidence offered in behalf of plaintiff. This assignment should also be overruled for the other reasons heretofore stated.

VII. Appellants contend, under their proposition 9, that: "The report of the referee and the judgment in support of it is based on a finding of agreements between Bradbury and Crites entirely outside of and different

from the written contract sued on, and consequently the court erred in following the recommendations of the referee and rendering judgment against Crites, the principal, and particularly as against United States Fidelity and Guaranty Company, the surety on the bond sued on.''

There was abundant substantial evidence offered by plaintiff in support of the referee's findings and recommendations in respect to above matter and the court committed no error in confirming same. What we have heretofore said applies to this assignment. It was disposed of properly under paragraph 8 of the referee's report in respect to same. The referee properly held, in view of above finding, that the surety was not released, and that judgment should be entered against both defendants, which was done. [Kline Cloak & Suit Co. v. Morris, 293 Mo. l. c. 496-7, 240 S. W. 100; State ex rel. Saline Co. v. Wilson, 288 Mo. l. c. 336-7, 232 S. W. 143.]

VIII.   After reading the record and briefs of counsel, we hold that plaintiff produced substantial evidence on all the material issues in the case; that the findings of the referee and judgment of the court thereon are well supported by substantial evidence; that no error of which appellants can legally complain were committed against them during the progress of the trial; that on the record as it stands, the judgment was for the right party and is accordingly affirmed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.