CATHERINE RYTERSKY v. OLIVER O'BRINE, Appellant.—70 S. W. (2d) 538.

Division One, April 19, 1934.

*Green, Henry & Remmers* for appellant.

*Everett Hullverson* and *Staunton E. Boudreau* for respondent.

24

STURGIS, C.—The defendant appeals from a judgment against him in a personal injury action for damages resulting to plaintiff from being struck by an automobile driven by the defendant. Plaintiff had just alighted from a street car on Broadway, in St. Louis, and was attempting to reach the sidewalk when struck and injured. The petition alleges several grounds of negligence on defendant's part, but the case went to the jury solely on a violation of the humanitarian rule in that the defendant could and should, with due care, have seen the plaintiff in a position of imminent peril in time, by using the means at hand, to have avoided striking her. The jury found this to be true and returned a verdict for plaintiff.

The defendant assigns error in that plaintiff's instruction submitting the case on the humanitarian rule is erroneous; that the verdict is grossly excessive, and that the plaintiff's attorney was guilty of making an improper argument to the jury.

■ We have considered but need not comment at length on the alleged error in plaintiff's principal instruction submitting the case on the humanitarian doctrine. It is the same error that is commented on in Williams v. St. Louis Public Service Co. (Mo. App.), 54 S. W. (2d) 764, except that the jury was told in this case that if plaintiff was in a position of peril "at and prior," instead of "at or prior," as in the Williams case, to the time she was injured and *thereafter* defendant could by reasonable care have averted the injury, to find for plaintiff. Perhaps the wording of the instruction in the present case is less confusing than in the Williams case, and we doubt very much if the jury was misled by it. The instruction, if read literally, is inaccurate as it is obvious that on a finding that the plaintiff was seen in peril at the moment of the injury, the defendant could not *thereafter* avoid injuring her, but, such meaning being obviously impossible, the jury would not likely understand it that way. As a new trial must be granted on another ground, it would be better on another trial to so draw the instruction as to avoid this criticism.

■ The charge of improper and prejudicial argument to the jury by plaintiff's attorney rests on these facts: When the jury was called plaintiff's attorney inquired of defendant's attorney if a certain named insurance company was interested in the outcome of the case as an insurer of defendant against damages, as plaintiff desired to interrogate the jury as to whether any juror was in any way interested in such or any like insurance company. Defendant's attorney assented and plaintiff's attorney was permitted to inquire fully as to such matters. No prospective juror was found to have any connection with or interest in such company or even any acquaintance with anybody connected with such company. The defendant's attorney then said to the jury:

"There has been some reference to the Commonwealth Casualty and Insurance Company. I want to be absolutely frank with you gentlemen about that feature of the case. To a limited extent, I represent the Commonwealth Casualty Company. That is, Mr. O'Brine had an insurance policy in the Commonwealth Casualty Company to a certain limit, providing that this company would indemnify him against loss sustained by reason of his negligence in the operation of his automobile. Of course, if there is no negligence on his part, then, of course, there is no liability on the part of the insurance company. In other words, the rule of law is not changed just because there is an insurance company interested to a limited extent.

Now, would the fact that he does carry insurance to a limited degree, as I have indicated, cause you gentlemen to have any feeling of prejudice in favor of the plaintiff? . . . If not, I would appreciate it if you would advise me. I have been frank with you gentlemen, and I would like for you to be just as frank with me. Now, you all feel you can fairly and impartially try this case, do you? All right. That's all.''

Being satisfied with the information obtained, the parties then struck off jurors to the number allowed by statute and the trial proceeded. Very properly, no further mention was made of the subject of insurance till the trial closed and the argument of the attorneys to the jury was commenced. Of course, the court's instructions to the jury made no mention of any such matter. In the course of the argument of plaintiff's attorney to the jury, he said:

''Now, gentlemen, I don't want you to say to yourselves, 'Well, if we give her the amount she sued for something might happen to it and she won't get the money.' Well, please don't get that idea in mind. You compensate her. Don't worry about what is going to happen to this judgment. My friend says there is insurance to a limited amount here. Well, I will say to you right now, gentlemen, in fairness to you and the defendant there, that whatever your verdict may be, that this boy (defendant)—I will promise here and now he won't have to pay a nickel of it to us, and I will make that solemn statement here right in an open court room. I will be fair with them.''

Defendant's attorney objected to this statement and argument as being highly improper and prejudicial and not supported by any testimony in the case, and asked the court to declare a mistrial and discharge the jury. The court, in presence of the jury, said: ''The jury will be instructed to disregard that statement,'' but overruled the motion to declare a mistrial and discharge the jury. The matter was then dropped and the argument continued, with the result that the jury returned a verdict for plaintiff for $12,000. Thereafter, pending defendant's motion for new trial complaining of this improper argument and that that the verdict was excessive, the plaintiff voluntarily entered a *remittitur* in the sum of $2,000, and the court then overruled the motion for new trial and entered a final judgment for plaintiff in the sum of $10,000.

On these facts, we think the case should be reversed and remanded for new trial.

It ought to be, and we think it is, well established that in the trial of personal injury cases based on negligence of the defendant, there are primarily only two issues for the jury to decide, whether the defendant has been guilty of negligence causing the injury, and, if so, the amount of damages to be properly awarded. Only these and such

collateral or subordinate issues as have a direct bearing on same are to be considered and determined by the jury. But, under the law providing for the selection and qualifying of jurors, and especially as each party is allowed to strike off a certain number of legally qualified jurors without cause, the parties are allowed to elicit on the *voir dire* examination much information in regard to matters which are otherwise irrelevant but have some bearing on the question of the juror being impartial, unbiased and altogether fit and suitable to try the particular case and useful to the parties and attorneys in making a selection as between qualified jurors. For this purpose, and for this purpose alone, we have held that it is proper on the *voir dire* examination to ascertain whether any juror who has qualified generally is in any way, directly or indirectly, interested in such insurer or carries a like policy in some company, or any other fact or relation which, if known, would aid the parties to the suit in making a choice between the qualified jurors. [Maurizi v. Western Coal & Mining Co., 321 Mo. 378, 396, 11 S. W. (2d) 268.] And we have often ruled that even this privilege must be exercised only in good faith and for an honest purpose. [Olian v. Olian, 332 Mo. 689, 59 S. W. (2d) 673; Maurizi v. Western Coal & Mining Co., 321 Mo. 378, 396, 11 S. W. (2d) 268.] This inquiry as to an insurer is confined strictly to the *voir dire* examination and when that is over it goes out of the case and should go out of the minds of the jurors. Hannah v. Butts, 330 Mo. 876, 51 S. W. (2d) 4, 8, where the court said: "There was, therefore, not the slightest excuse or justification for mentioning insurance or an insurance company in the presence or hearing of the jury after it was impaneled, unless," etc. Whether a defendant does or does not carry liability insurance; whether he has paid for and is entitled to have recourse against an insurer, or how he is to raise the money to pay the judgment, has nothing to do with the trial of the case and the determination of the question of the defendant's having been negligent or the amount of damages he has caused to the plaintiff.

Let us repeat that when a plaintiff has been afforded his privilege on the *voir dire* examination to make an honest inquiry of the jurors as to their relation to any person directly or indirectly interested in the case as an insurer or otherwise, so as to enable him to select impartial, disinterested, and altogether fit jurors to try the case, then the question of liability insurance goes out of the case, as in fact it never was in it, so far as the trial of the case is concerned. The purpose of permitting this *voir dire* examination is that the jurors may impart relevant information to the attorneys in order to aid them in selecting an impartial jury, and not to afford the attorneys an opportunity to impart to the jurors prejudicial information to be kept in mind and acted on by them in arriving at a verdict. No attorney

28

should seek or be allowed to convert his privilege of obtaining information in order to select an impartial jury into a means of planting prejudicial facts in the minds of jurors so as to render them biased and prejudiced.

While the law is no respecter of persons and it matters not what is the financial status of the defendant, whether a pauper or a millionaire, a person or a corporation, the trouble is that in the practical administration of the law plaintiffs and lawyers in cases like this act on the theory that if they can get it before the jury that the individual defendant—a mere boy, as in this case—has behind him an insurance company to indemnify him for his loss and he will not individually have to stand the loss, the chances for a good, big verdict are much enhanced. [Hannah v. Butts, supra; Crapson v. United Chautauqua Co. (Mo. App.), 27 S. W. (2d) 722, 726.] So it is, as we have frequently found, the plaintiff makes use or misuse of his privilege to ascertain that an insurance company is back of the defendant, not for the good faith purpose of enabling him to select a fair and disinterested jury by striking off the panel some prospective juror who is a stockholder, officer or agent, or an employee of such a company, or even a policyholder therein, but for the mere purpose of getting it before the jury that an insurance company will ultimately have to pay the judgment. The courts must condemn and prevent, as far as possible, such practice. The courts cannot well impugn the motive of litigants or lawyers in this respect and do not do so unless it is demonstrated or made apparent that the privilege of making the preliminary inquiry is not being used in good faith, but to prejudice the jury and obtain an unfair advantage. We can safely say, we think, that no plaintiff should be allowed to keep green before the minds of the jury throughout the trial or in the closing argument and after the legitimate purpose of such inquiry has been fully accomplished, the fact that the real defendant carries liability insurance and will not have to pay the judgment rendered since a corporate insurer is back of him. We approve what was said by the Court of Appeals in Bright v. Sammons (Mo. App.), 214 S. W. 425, 427, as follows: "To instill into the jurors' minds the idea that the defendant is not really interested in the outcome of the case, because whatever may be the result, someone else will have to bear the loss, is very reprehensible, and, where it appears that such has been the adroit purpose and result, such conduct will meet with the punishment of a reversal."

What, then, should we say of the closing argument of plaintiff's attorney as shown here? Without any mention having been made of the matter of liability insurance throughout the *trial*, and without any evidence having been offered in relation thereto, as there should and could not have been because in no way an issue; and in answer

to nothing said by defendant's attorney in his argument, the attorney for plaintiff, for fear that the jury may have forgotten what was disclosed on the *voir dire* examination before the jury was even sworn to try the case, harks back to what was then incidentally mentioned as to liability insurance and makes this extraordinary statement:

"Don't worry about what is going to happen to this judgment. My friend says there is insurance to a limited amount here. Well, I will say to you right now, gentlemen, in fairness to you and the defendant there, that whatever your verdict may be, that this boy— I will promise here and now *he* won't have to pay a nickel of it to us, and I will make that solemn statement here right in an open court room. I will be fair with them."

This statement might have been taken by the jury as a positive assurance that defendant carried sufficient insurance to protect him against any judgment up to the amount sued for, $25,000—a fact not proven and not proper to have been proven. It was at least a solemn promise by plaintiff, that however large the verdict might be, plaintiff would see to it that it would be so trimmed, if necessary, that defendant would have to pay nothing. We can hardly imagine a more improper and prejudicial line of argument than disclosed here.

The only excuse offered by plaintiff is that the statement and argument just mentioned was provoked and justified by defendant's counsel in that on the *voir dire* examination, after plaintiff had made inquiry as to any connection a juror might have with the liability insurer, defendant's attorney had said to the jury:

"To a limited extent, I represent the Commonwealth Casualty Company. That is, Mr. O'Brine had an insurance policy in the Commonwealth Casualty Company to a certain limit, providing that this company would indemnify him against loss sustained by reason of his negligence in the operation of his automobile. Of course, if there is no negligence on his part, then, of course, there is no liability on the part of the insurance company."

We see nothing improper in this statement. As we have said, the sole and only reason for liability insurance being mentioned in the preliminary procedure was to enable the parties to select impartial and unobjectionable jurors. It was perfectly right to present the matter in such way that the jurors would understand this purpose. Why should not the jurors understand that the only reason for asking about their connection with an insurance company was that defendant had a policy in the company mentioned indemnifying him against loss sustained by reason of his negligence, and that if defendant was not negligent, there would be no liability? It was certainly proper for defendant's attorney to ascertain if any juror would be influenced or prejudiced in favor of plaintiff because of his

finding out that defendant had liability insurance. Whether the policy was large or small was wholly immaterial. Defendant's attorney mentioned the policy as being limited in amount, but how could that harm plaintiff? Why was plaintiff interested in having the jury believe that the policy was sufficiently large to cover any judgment the plaintiff might recover? No objection was made at the time to defendant's line of inquiry and if there had been it would have been properly overruled. We see no excuse whatever for plaintiff abiding her time and in the final argument have her attorney assure the jury that only the insurance company would be looked to in collecting the judgment.

It is true that the court sustained the objection with the remark that the jury should disregard the statement. We are not satisfied, however, that the error was cured in that way. More drastic action was needed. [Olian v. Olian, supra; Crapson v. United Chautauqua Co. (Mo. App.), 27 S. W. (2d) 722, 725; O'Hara v. Lamb Const. Co. (Mo. App.), 197 S. W. 163, and cases cited; Gore v. Brockman, 138 Mo. App. 231, 235, 119 S. W. 1082.] The jury returned a verdict for $12,000. We need not discuss the question of the verdict being excessive and the result of prejudice. The plaintiff, without waiting for the trial court to rule on that question, voluntarily entered a *remittitur* of $2,000. Whether this was done because the plaintiff honestly thought the verdict excessive or in compliance with the solemn promise made to the jury to see to it that the defendant would not have to pay more than the insurance company's liability, we need not stop to inquire. This question may not arise on another trial.

The judgment is reversed and the cause remanded for further proceeding. *Ferguson,* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* absent.