HERSCHEL F. DAVIS v. F. M. STAMPER COMPANY, a Corporation, Appellant.—148 S. W. (2d) 765.

Division One, March 13, 1941.

*Mitchell J. Henderson, Henderson, Deacy, Henderson & Swofford, Thos. E. Deacy, Hunter & Chamier, Oak Hunter* and *Herbert Jacob* for appellant.

764

*Clay C. Rogers, Rufus Burrus, Mossman, Rogers & Bell* and *Burrus & Burrus* for respondent.

DALTON, C.—This is an action for damages for personal injuries sustained by plaintiff on April 16, 1938, at about 1:30 A. M., when the automobile in which plaintiff was riding, as a guest of one McCormick, collided with the rear of one of defendant's trucks, a tractor with trailer. As the result of injuries sustained, plaintiff's right arm had to be amputated about half way between the shoulder and the elbow. Plaintiff charged defendant with negligence in failing to display a red light on the rear of the trailer. Defendant's answer was a general denial and a plea of contributory negligence. A jury returned a verdict for plaintiff for $20,000, upon which judgment was duly entered. Defendant has taken the necessary steps to present the matter on appeal.

One of the errors assigned is that the court failed to give a peremptory instruction for defendant at the close of all the evidence. Appellant concedes that plaintiff was only required to exercise ordinary care for his own safety, but contends (1) that plaintiff, on his own testimony, was guilty of contributory negligence, as a matter of law, in failing to discover defendant's trailer, or, if he saw it, in failing to warn the driver of the automobile; and (2) that any negligent failure to display a red light on the back of the trailer was not the proximate cause of the collision and resulting injury. A statement of the evidence most favorable to plaintiff is, therefore, required.

The collision occurred on Van Horn Road, a four-lane paved highway between Kansas City and Independence, at a point east of Blue River and west of the intersection of Blue Ridge Boulevard. The highway makes three slight curves east of Blue River and has a seven per cent grade in the third curve, where the collision occurred. Plaintiff was riding in the front seat of a 1931 Chevrolet sedan, owned and operated by McCormick, with whom he was "talking and visiting." The automobile was in good mechanical con-

dition. Its headlights were turned on and they were "fair, for a '31 Chevvy." The automobile was traveling east at 25 to 35 miles per hour (at 35 or 40 miles per hour, according to the driver), rounding a two per cent curve to the right (a deflection of a little more than one foot in 100 feet). Plaintiff had seen nothing wrong with the way McCormick was driving. He (McCormick) appeared to be paying attention to the highway and had not been driving fast nor recklessly. The automobile came up behind defendant's loaded tractor trailer, which was traveling in the same direction (east) at about 4 miles per hour. The body of the trailer was about 18 feet long, 6½ feet high and 7 feet in width, and elevated above the rear wheels. It was of a "silver," "aluminum," or "dirty color," "dusty gray," and looked more like the pavement than anything else. There were no lights on the rear of the tractor trailer. Both vehicles were on the extreme south or right hand lane of the highway. It was a dark night, but the atmosphere was clear.

Both plaintiff and McCormick was looking ahead, but neither saw the trailer, until immediately before the collision. An automobile traveling in the opposite direction, with "awful bright" lights, had met and passed the Chevrolet immediately before the collision. The collision occurred in a flash after this automobile had passed. At least, it occurred within a second or two afterwards, and before the automobile in which plaintiff was riding had traveled 100 feet. Other evidence, less favorable to plaintiff, to the effect that the collision happened one block or 15 seconds after the automobiles passed, may be disregarded. The approaching automobile had dimmed its lights when about 50 feet away. McCormick had dimmed his lights in response. The collision with the trailer occurred before McCormick's lights were turned back on bright. Both plaintiff and McCormick saw the rear of the trailer at approximately the same time. The automobile was then within 6 to 12 feet of the rear of the trailer. Plaintiff said nothing, but did make some kind of a noise. McCormick didn't get his brakes on, but cut his wheels sharply to the left. The upright post at the right hand side of the windshield of the automobile struck the left rear corner of the trailer. McCormick had turned the automobile about 6 feet to the left, and with another 8 or 9 inches, plaintiff's arm would not have been hit. According to plaintiff, with the Chevrolet lights on dim, one could probably see an object 100 feet in front of the automobile on a straight way when looking down on a flat surface (250 feet according to McCormick), but they were not looking for, nor expecting, an unlighted truck on the highway at that particular time. The automobile could have been stopped in 35 feet.

According to defendant's evidence, the tractor had its two headlights burning and, at the rear of the trailer, there were two 6 inch red glass reflectors, three lights at the top, one tail light beneath and

a clearance light on either side. The lights were red, directed to the rear and were burning at the time of the collision.

Appellant insists that "the physical facts and all of the evidence in the case disclosed that the defendant's truck was plainly visible to the plaintiff by the headlights of the car in which he was riding;" that he was looking ahead and, in the eyes of the law, was bound to have seen that which was in full view; that he must have seen the trailer in time to have warned the driver of the automobile and prevented the collision; and that, if plaintiff negligently failed to see it, or, if he did see it, and negligently failed to warn the driver, he was guilty of contributory negligence as a matter of law.

Appellant relies particularly on State ex rel. Kansas City Southern Ry. Co. v. Shain, 340 Mo. 1195, 105 S. W. (2d) 915; Dempsey v. Horton, 337 Mo. 379, 84 S. W. (2d) 621; and Woods v. Moore (Mo. App.), 48 S. W. (2d) 202. In the first case, supra, the driver of the automobile, under the law required to exercise the highest degree of care, came up to the railroad crossing with his automobile lights burning, so as to illuminate the highway 100 yards ahead under normal conditions. He had knowledge of the existence of the railroad crossing, which might be obstructed by a train, and of the presence of whirling snow and dust that somewhat obstructed the view. He slowed down until "almost still" at a point 10 or 12 feet from the track and then started up. When 5 or 6 feet from the track he saw a freight car stationary across the crossing. Although he "slammed on the brakes" he struck the freight car with such force as to wedge half the automobile engine under the freight car. The court held it was incredible that plaintiff, under the circumstances stated, could not have seen the freight car sooner, and held plaintiff was guilty of contributory negligence, since it was his duty to exercise care *commensurate with the circumstances*, and if necessary, to continue to look until he could see ahead, even up to the crossing.

In the Dempsey case, supra, the court said (84 S. W. (2d) 621, 626): "In the instant case plaintiff voluntarily stood on a paved public highway, where he had reason to anticipate automobile traffic, for several minutes without taking the precaution to look for the approach of that traffic from which danger was to be expected. This, without any particular purpose for so doing. . . . Any duty to look on the part of one on such a highway must embrace observation in the direction from which danger is to be anticipated. Since plaintiff's negligence is established by plaintiff's own testimony, he is precluded from recovery on the grounds of primary negligence."

In the Woods case, supra, the plaintiff, a worker on a road improvement project, in the daytime and from a point where his view was unobstructed, walked out upon a heavily traveled public highway, where fast traffic was to be expected, and walked directly into the path of a rapidly approaching automobile that was in plain view.

Although he said that he looked before going upon the highway, he was held to be guilty of contributory negligence as a matter of law.

Appellant relies particularly on the rule stated in the first two cases to the effect that a failure on the part of a plaintiff, where a duty to look exists, to see what is plainly visible when he looks, constitutes contributory negligence as a matter of law. We think the rule has no application here, in view of the particular facts and circumstances shown by the evidence, and for the further reason that the duty of a guest passenger in an automobile to look and to see unlighted, slowly moving obstructions in the nighttime upon the traveled portion of the public highway, where such unlighted obstructions are not to be expected, is not the same duty that rests upon an automobile driver to look and to see a train upon a known railroad crossing, where a clear track cannot be expected; neither is it the same duty that rests upon a pedestrian who is standing or going upon a heavily traveled public highway where fast automobile traffic is to be expected.

In view of the evidence in this record, plaintiff may not be held to be guilty of contributory negligence, as a matter of law, in failing to discover the presence of defendant's trailer upon the highway in time to have warned the driver and avoided the collision. Plaintiff was only required to exercise ordinary care for his own safety. The unlighted, slowly moving trailer was in the nature of an unlighted obstruction upon the traveled portion of the highway at a place one could reasonably expect the highway to be clear of unlighted obstructions. Without any knowledge of the presence of the unlighted trailer upon the highway, there was no duty on plaintiff, as a guest passenger, to anticipate and search out such an obstruction. He was only required to exercise ordinary care under the circumstances which were known to him and which could reasonably be expected. An automobile with very bright lights had passed immediately before the collision. The action of such lights upon one's eyes is a matter of common knowledge and so is the fact that a certain time is required for one's eyes to re-adjust themselves after such lights have passed. The lights on the automobile in which plaintiff was riding had been dimmed in response to the dimming of the lights of the approaching car. There were no red lights on the rear of the trailer and its color blended with that of the pavement. The night was dark. Plaintiff and McCormick were both looking ahead, but under the particular circumstances, did not see the unlighted trailer in time to avoid the collision.

Two of plaintiff's witnesses, drivers of automobiles, under the duty to exercise the highest degree of care in the operation of their automobiles, who came upon the scene of the wreck, testified that, by the aid of the headlights of their respective automobiles, they saw the defendant's unlighted trailer as it proceeded along the

highway immediately after the collision; one at a distance of 100 feet and the other at a distance of 200 to 250 feet. The evidence of these witnesses does not establish, as a matter of law, that plaintiff, as a guest passenger in an automobile in the exercise of ordinary care for his own safety, should have seen the unlighted trailer under the circumstances existing immediately before the collision. These witnesses were automobile drivers, acting under a higher duty, and driving automobiles with different headlights and approaching the trailer under different circumstances. The mere facts that there was evidence from which the jury could have found that the unlighted trailer could have been seen by plaintiff in time for plaintiff to have notified the driver and to have avoided the collision, is immaterial here. Whether or not under all the evidence plaintiff, in the exercise of ordinary care for his own safety, should have seen the unlighted trailer in time to have warned the driver and avoided the collision was a question of fact for the jury. [Smith v. Producers Cold Storage Company (Mo. App.), 128 S. W. (2d) 299, 303; (See, also, Cotton v. Ship-By-Truck Company, 337 Mo. 270, 85 S. W. (2d) 80, 83, decided under Kansas law).]

Under circumstances somewhat similar to those disclosed by the evidence in this case, we have held that even the *driver* of an automobile, under the duty of exercising the highest degree of care, was not guilty of contributory negligence, as a matter of law, in failing to see such an obstruction in time to prevent a collision. [Herrington v. Hoey, 345 Mo. 1108, 139 S. W. (2d) 477, 480; Bedsaul v. Feeback, 341 Mo. 50, 106 S. W. (2d) 431, 434; Clason v. Lenz, 332 Mo. 1113, 61 S. W. (2d) 727, 729; Roper v. Greenspon, 272 Mo. 288, 198 S. W. 1107; See, also, Pfeiffer v. Schee (Mo. App.), 107 S. W. (2d) 170, 174; Ross v. Hoffman (Mo. App.), 269 S. W. 679, 680.]

Appellant further contends that the testimony of plaintiff and McCormick that they did not see the trailer, until the automobile was in 6 to 12 feet of it, is incredible; and contradictory to physical law and common knowledge. We are unable to agree. The evidence in this record, considered in a light most favorable to plaintiff, is such as to make an issue for a jury. "Only in those extraordinary cases where deductions from physical laws and facts so clearly and irrefutably disprove the testimony of witnesses that reasonable minds may not entertain any other conclusion are courts justified in ruling sworn testimony inherently unbelievable and impossible." [Dempsey v. Horton, supra, 84 S. W. (2d) 621, 624, citing cases.]

Appellant further insists that the physical facts and all of the evidence in the case disclosed that the driver of the automobile must have seen defendant's trailer by the headlights of his own automobile in sufficient time to have avoided the collision; that, if he did see it even a fraction of a second before he admits he saw it, and

if he had turned to the left a fraction of a second sooner, there would have been no collision; that the negligence of the driver was the proximate cause of the collision and ''the alleged failure of the defendant to have a light burning at the rear of its truck was not the proximate cause of the collision.''

According to plaintiff's evidence, the defendant was operating its tractor and trailer upon the highway at night in violation of what is now Section 8386, R. S. 1939, Mo. Stat. Ann., p. 5222, sec. 7778, in that it carried no lighted signal lamps as therein required. ''Motor vehicles . . . shall display at least . . . one red light mounted at the back and directed to the rear. . . . Trailers, when being towed, shall display one red light mounted at the back and directed toward the rear.''

The negligence, if any, of McCormick could not be imputed to plaintiff. If the failure of defendant to comply with the statute by not having a red light on the back of the trailer, combined with the negligence of McCormick, directly contributed to cause the collision and injury to plaintiff, the defendant was liable. Under the evidence in this case the question was for the jury. In a case having somewhat similar facts this court said: ''The rule is too well established to require discussion that the negligence of the driver of an automobile without more cannot be imputed to the guest. [Thompson v. St. Louis-S. F. Ry. Co., 334 Mo. 958, 69 S. W. (2d) 936, 945.] Even if the driver was negligent, the company is also liable if it is guilty of negligence which was a contributing or concurring cause of the collision. To constitute a negligent act the proximate cause of the injury, it need not necessarily be the sole cause, but it is sufficient if it is a concurring cause. Where several causes concur to produce an injury, either cause may be termed a proximate cause if it is an efficient cause of injury.'' [Fawkes v. National Refining Company, 341 Mo. 630, 639, 108 S. W. (2d) 7, 11. (Citing cases); Smith v. Producers Cold Storage Company, supra.]

Appellant further assigns error on the court's refusal to sustain objections to certain remarks by plaintiff's counsel in his closing argument to the jury.

Before the *voir dire* examination of the panel of veniremen and out of their hearing, plaintiff's counsel requested the name of the company covering the risk and assisting in the defense of the case. He was advised that a certain attorney was employed by the Western Casualty and Surety Company. Counsel then questioned the members of the panel at some length as to their interest in or connection with this company and whether they knew Mr. William Sweet, Manager of Claims for that company.

While arguing the case to the jury, defendant's attorney, Mr. Hunter, said: ''Gentlemen, this is a case where I feel dreadfully sorry for the injured boy, but you cannot and you should not be a

party to taking the money out of F. M. Stamper Company and pay this boy for the wrong he caused himself. . . . The negligence is on the boy that was injured, and I am dreadfully sorry for him, and you men will be sorry for him, but you cannot put your hand into the pocket of F. M. Stamper Company and pay him because he has a serious injury.''

In his closing argument, Mr. Rogers, plaintiff's counsel, stated: ''And, now, Mr. Hunter, the fine lawyer from Moberly, I want to allay your fears. You are afraid that this jury is going to reach their hand into the pocket of F. M. Stamper Company. I want to allay your fears. We will never have to reach into your client's pocket to take out a dime. We will get the $25,000 without putting a hand into your client's pocket, so you can go back to Moberly and be unafraid.'' Mr. Deacy: ''Now, just a minute. If Your Honor please, that statement is objected to as being entirely outside the record in this case and entirely improper.'' Mr. Rogers: ''It is an answer to his argument.'' Court: ''Objection overruled.'' (Exception saved.)

Respondent contends that appellant's assignment of error is insufficient to preserve the point for review. It is contended the objectionable matter is not pointed out and the page of the record where the alleged error arises is not given. The assignment of error states the substance of the remarks complained of and refers to it as ''improper argument and remarks of plaintiff's counsel *in his closing argument to the jury.''* (Italics ours.) The reference in points and authorities is to the same effect as in the assignment of errors, but in appellant's statement and in the printed argument the particular remarks, and the objection thereto, are set out and the page of the record given. The location of the closing argument to the jury by counsel for plaintiff would not be difficult to locate in the abstract of the record, even in the absence of reference to a particular page. The failure, in the assignment of error, to give the page of the abstract of the record where the particular remarks are found, imposed no unreasonable burden on the court. No difficulty or uncertainty resulted. Respondent has not been injured or prejudiced. Respondent relies upon the following cases: School Dist. of Kansas City v. Phoenix Land and Improvement Company, 297 Mo. 332, 249 S. W. 51; Nevins v. Gilliland, 290 Mo. 293, 300, 234 S. W. 818, 820; Bradbury v. Crites, 312 Mo. 694, 281 S. W. 725, 731; State v. Preslar, 316 Mo. 144, 290 S. W. 142, 144. These cases are not decisive in view of the particular record here. We must hold that the assignment was sufficient. [Polk v. M.-K.-T. Ry. Co., 341 Mo. 1213, 111 S. W. (2d) 138, 145.]

Respondent next contends that the objection made to the argument is insufficient to present the matter for review because counsel did not call the attention of the court to what statement he was ob-

jecting to; and that the objection that the matter was outside the record was a general objection and was, therefore, insufficient. Respondent relies on Newport v. Montgomery Ward & Co., 344 Mo. 646, 127 S. W. (2d) 687, 689; State v. Phillips, 233 Mo. 299, 135 S. W. 4, and Ternetz v. St. Louis Lime & Cement Company (Mo.), 252 S. W. 65, 71, and says that, "An objection (to argument of counsel) is insufficient which does not point out the specific statement complained of and does not call the attention of the trial court to the specific grounds upon which it is based." In the case before us the objection immediately followed the objectionable statement. The objection was that the statement was entirely outside the record. Counsel for plaintiff well understood the objection as evidenced by his reply. We think the trial court could not have been misled or misunderstood the objection. The objection was sufficient. It was made after the remarks complained of and it assigned a specific and sufficient reason. Respondent's argument that "no opportunity was afforded the trial court to . . . determine whether or not on any specific ground the statement was improper" cannot be sustained. [Murphy v. Tumbrink (Mo. App.), 25 S. W. (2d) 133, 134 (3), 135 (5); See State v. Phillips, supra, 233 Mo. 299, 306, 135 S. W. 4.]

Respondent finally contends that the argument was proper as an answer to the argument of counsel for defendant, since defendant's counsel had referred to the jury putting its "hand in the pocket of F. M. Stamper Company." Respondent says the statement of his attorney was not a claim that defendant would not be required to pay the *judgment*; that the statement was not outside the record, since it was in response to appellant's suggestion that the jury would "*pick the pocket*" of defendant; that plaintiff's counsel's remarks were invited, were purely retaliatory, a "fair retort," "not prejudicial," and that no insurance company was mentioned. In his brief, respondent says, "there will be no 'picking of the pocket' of Stamper and Company to collect this judgment. It can be taken without reaching any hand into anybody's pocket." "No one will ever reach down into defendant's pocket (considered literally) to pay the judgment because defendant is not in any such financial situation as counsel for defendant tried to make the jury believe during the argument." "It is common for corporations to carry insurance of $50,000 and $100,000 limits and for aught the record shows the defendant is insured to that extent." The argument is in line with the statement to the jury. "We will get the $25,000 without putting a hand into your client's pocket." Respondent cites Huhn v. Ruprecht (Mo.), 2 S. W. (2d) 760, 763; Yost v. Union Pac. Railroad Co., 245 Mo. 219, 149 S. W. 577; Rainier v. Quincy, O. & K. C. Railroad Co. (Mo.), 271 S. W. 500; Nelson v. Heine Boiler Co., 323 Mo. 826, 20 S. W. (2d) 906, 911; Allen v. Autenrieth (Mo. App.), 280 S. W. 79, and other cases.

In the case of Huhn v. Ruprecht, supra, "On their *voir dire* the jurors were asked if they knew Sherman and Ellis or any of their claim agents. Whether this firm was engaged as insurance agents or in writing insurance does not clearly appear." In argument to the jury, defendant's counsel referred to plaintiff's counsel and "his associates as greedily waiting to carry off poor, old, hardworking Ruprecht's money after the verdict." Plaintiff's counsel replied by argument "to the effect that appellant was not the real defendant, because Sherman and Ellis and not the appellant would have to pay the judgment." It does not appear what objection, if any, was made at the time or whether any exception was saved, if objection was in fact made. It was held that the argument was retaliatory; that the trial court had to determine its propriety, and that this court could not say "that reversible error was committed by respondent's counsel in this respect."

In the case of Allen v. Autenrieth, supra, in the course of his argument to the jury defendant's counsel sought to impress the jury with the fact that, unless they believed defendant was guilty of negligence they should not "take his pocket book" and give it to plaintiff. In reply, plaintiff's counsel stated, "I don't believe that, no matter what your verdict is, that Arthur Autenrieth's pocket book is affected in the least. That is my honest opinion about it, and I know what I am talking about." Objection was made, sustained and the jury instructed to disregard the argument. A request to discharge the jury was refused. On appeal the court said: "Of course, this argument was calculated to impress the jury with the belief that defendant carried liability insurance, and that an insurance company would ultimately be called upon to pay any judgment that might be rendered in the case. That such argument was highly improper may not be denied. . . . Statements of counsel, during his argument to the jury, of matters not in evidence, with the obvious purpose of arousing the prejudice of the jury, and of confusing the real issues in the case are particularly objectionable. . . . Then, too, improper remarks are the more prejudicial when made during a closing argument to the jury when there is no opportunity for reply. . . . However, the issue as to defendant's pocketbook was injected into the case by his own counsel, and it was the right of plaintiff's attorney, within reasonable bounds, to reply thereto. . . . While we think counsel exceeded reasonable bounds, *the court promptly informed him that such argument was improper and instructed the jury to disregard it.* It is largely for the trial court to determine the extent to which he shall interfere because of improper argument, and, unless such discretion has been clearly abused, the appellate court will not reverse the judgment for such cause." (Italics ours.) The judgment for plaintiff was affirmed. The other cases cited by respondent are less applicable.

Respondent's theory that the remarks were invited and retaliatory cannot be sustained. Neither can we sustain respondent's position that defendant's remarks were equally or more objectionable than those of defendant's counsel. The argument was not that defendant was broke and lacked financial ability to pay, but rather that there was no liability because of plaintiff's negligence. Nor can we accept respondent's suggestion that the remarks were intended to draw a distinction between surplus, earnings and savings, the latter only being in defendant's pocket. Nor can we accept the suggestion that defendant's counsel had insinuated that the jury was about to literally "pick the pocket" of defendant and that plaintiff's counsel was merely answering that there would be no wrongful or unlawful "pocket picking." Defendant's counsel referred to action by the *jury*, while plaintiff's counsel said: "*We* will get the $25,000 (for which judgment was asked)."

We may assume that the members of the jury were normal persons of ordinary intelligence and experience. They, no doubt, fully understood the significance of the qualifying questions on *voir dire* examination with reference to their relationship to the Western Casualty and Surety Company and its "Manager of Claims." At least, we may not assume that they lacked the mental capacity to understand that a liability insurance company was interested in the case. We think the remarks of plaintiff's counsel could have had no purpose, except to refresh the jurors' recollection as to their *voir dire* examination, and to attempt to inject the insurance issue into the case in order to bias and prejudice the jury against defendant. It is true that an insurance company was not mentioned, but the inference was plain.

After a careful review of the record, and the authorities, we are unable to find any justification or excuse for the particular remarks. They were objectionable, uncalled for, and improper. The remarks were to the effect that the $25,000 (for which judgment was sought) would not be paid by defendant but by someone else. The intimation that it would be paid by the interested liability company was so plain that it would be understood by any intelligent person. Instead of sustaining the objection or directing the jury to disregard the statement, the trial court in effect, sanctioned and approved the remarks. After the false issue was injected no corrective measures of any kind were applied. We think the court committed reversible error in overruling defendant's objection. The matter has been so fully discussed in recent cases, involving similar situations, and the authorties have been so carefully reviewed that further discussion is not necessary. [Buehler v. Festus Mercantile Company (En Banc), 343 Mo. 139, 119 S. W. (2d) 961, 966-970; Rytersky v. O'Brien, 335 Mo. 22, 70 S. W. (2d) 538.]

Other assignments of error based upon alleged manipulation of the injured arm and demonstrations of disability before the jury, and the question of excessive verdict need not be considered. The judgment is reversed and the cause remanded. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.