251 S.W.2d 626 (1952)
PHILLIPS
v.
VROOMAN et al.
No. 42777.
Supreme Court of Missouri, Division No. 1.
October 13, 1952.
Lyman Field, Clay C. Rogers, Rogers, Field & Gentry, Kansas City, for appellant.
Harold T. VanDyke, Albert Thomson, Johnson, Davis, Thomson, VanDyke & Fairchild, Kansas City, for respondent.
LOZIER, Commissioner.
Plaintiff-appellant (herein called plaintiff) sued defendants-respondents (herein called defendants) for damages for personal injuries. Plaintiff had a $25,000 verdict and judgment was entered thereon. Defendants' new trial motion was sustained "on the ground of prejudicial remarks of counsel for plaintiff in his argument to the jury." Plaintiff appealed.
The argument involved was: "In conclusion, gentlemen, I say to you that a just and a proper verdict in this case is not going to hurt these defendants a particle. A just and proper verdict doesn't hurt anybody. It isn't going to hurt them a particle." Plaintiff here contends that the argument was both inherently proper and retaliatory; and that defendants' objection thereto was neither sufficient nor timely.
This is the second appeal. See Phillips v. Vrooman, 361 Mo. 1098, 238 S.W.2d 355. The sole instant issue permits a very brief statement of the circumstances of the airplane accident in which plaintiff sustained his injuries. Defendant LeBow and defendant *627 Vrooman, respectively owner and pilot of the plane, Selders and plaintiff were in the plane when it "took off" a South Bend, Indiana, airport runway on November 9, 1947. The "missing" of the plane's engine made necessary a "crash landing." The sharp fact issue below was whether the engine was "missing" before or just after it left the ground (or at a time when Vrooman should not have "taken off" or could have landed safely) or first began "missing" after the plane was 200-300 feet in the air (or at a time when Vrooman had to make a "crash landing"). Plaintiff's theory was, and his evidence tended to show and the jury obviously found, that the crash was caused by Vrooman's negligence.
On voir dire examination, plaintiff's counsel asked whether any member of the panel had "any policies of insurance, any connection with, or work for the Phoenix Indemnity Company of New York City, a casualty company? Do any of you work for that insurance company or any members of your family have any connection with it? Do any of you work for or have any connection with or do any members of your family have any connection with the Aereo Insurance Underwriters, 111 Broad Street, New York City?" Mr. Sheriff, a member of the panel, stated that he worked for a realty company which, "through its insurance department, placed business" with Aereo Insurance Underwriters. Whereupon, plaintiff's counsel conducted a rather lengthy examination (eighteen questions) of Mr. Sheriff as to the exact nature of his connection with that insurance company and whether such connection would likely influence his verdict in the case. In the course of the examination, it developed that the juror had "placed" several of the policies and had adjusted or "settled" several minor claims; that in adjusting claims, his "interest in keeping the loss ratio of claims down" was "only in just a general way as any other insurance agent would"; and that "to keep the loss ratio of insurance claims down was part of his business." Later, plaintiff's counsel asked: "Have any members of the panel ever had any experience in adjusting claims for insurance companies or as a claim adjuster for any company? I believe you said, Mr. Sheriff, that you had adjusted several minor aviation claims. Mr. Sheriff: As well as other types of insurance claims, fire. Mr. Field: Has any other member of the panel had any experience adjusting claims? * * *"
Defendants' attorney asked the panel generally if any member of the panel or member of his family had had a claim or suit against anyone. Mr. Belzer, a member of the panel, answered that he had had an automobile accident, "but the case was settled. I had a claim with the insurance company on an accident in 1948. I still don't know about it; never heard whether it was settled. They didn't bother me so I didn't bother them." Thereafter, plaintiff's counsel's examination of Mr. Belzer was: "Mr. Field: Mr. Belzer, you said, I believe, you had a claim against an insurance company? Mr. Belzer: My wife hit a car and someone got injured. Mr. Field: And they brought a claim against you? Mr. Belzer: Against the insurance company. Mr. Field: You turned it over to your insurance company? Mr. Belzer: That's right. Mr. Field: That matter has not been settled? Mr. Belzer: I don't know. I never heard from them since 1948. Mr. Field: Did they file suit against you, Mr. Belzer? Mr. Belzer: Yes, they did. Mr. Field: And you turned the petition over to your insurance company to handle? Mr. Belzer: That's right. Mr. Field: You haven't heard whether it was settled? Mr. Belzer: Never did. Mr. Field: At least, you were not brought into court? Mr. Belzer: That's right."
Plaintiff's counsel then, out of the jury's hearing, moved to discharge Mr. Sheriff because "one of his employers is actually interested"; though the insurance company was not a party, "they are very definitely interested." The motion was overruled. In discussing the matter the court said: "I am thinking about the chances of them (the jury) thinking about the reason was for asking if someone worked for the company and being influenced by it." And plaintiff's counsel used this illustration: "Suppose I come down here and I am defending *628 a case which is covered by the Travelers and the Travelers is going to pay the judgment. Of course, it is not a party to the suit, but I am just wondering if their interest wouldn't disqualify him. * * * He said he was interested in keeping claims down."
After sustention of defendants' new trial motion, plaintiff filed what he termed a "motion for rehearing and to permit additional argument" on the new trial motion. In the course of the argument on plaintiff's motion, the trial judge made several statements for the purpose of clarifying or more fully stating why he had granted a new trial. It was his view that the matter was not one involving exercise of discretion because "in my opinion that language said to the jury, `The insurance company will take care of this,' and that is what it meant to me. * * * My own reaction, as I have told you, was that it said to me the insurance company will take care of this and you were calling the attention of the jury to insurance. * * * My opinion is that the facts will determine whether it was an appropriate argument. * * * It is my opinion that the case could go up (on appeal) on the question of the language used, together with the voir dire examination and the court can then pass on that and they would have both sides. * * * I would be glad to have on the record * * * that I passed upon the matter solely and alone from my interpretation of the language of counsel in making the argument, in connection with the voir dire examination, and there was nothing else in the case that directed me to sustain the (new trial) motion * * *. And there was nothing in the actions or attitude of counsel that was in any way prejudicial; * * * it is my view that the language * * *, to me it was saying to the jury that the insurance company would take care of this matter. If the jury should be an average jury and they reached the same impression that I did, there was only one thing to do. It just came to me as a jolt when that language was used and as I said before, I had mentioned it (to counsel after the jury had retired) at the time, before they came in with a verdict what effect it had. Doubtless it had the effect counsel had in mind in making the argument. He was making the argument for the benefit of his client and for the strengthening of his case."
The trial court expressly interpreted the language in the light of plaintiff's counsel's extensive voir dire examination of two prospective jurors as to insurance matters. Undoubtedly, the trial court, interpreting the language in the light of that examination, was convinced that the jury (also recalling that examination) would probably understand that plaintiff's counsel was saying that defendants would not be "hurt a particle" by a plaintiff's verdict because an insurance company was going to pay any judgment based upon such a verdict. In effect, the trial court's ruling was that the argument improperly "injected insurance in the case" and was prejudicial to defendants.
Plaintiff contends that the argument was retaliatory. He says: Throughout the trial defendants "made maximum use" of two propositionsthat the parties in the plane were "all friends" going back "together" and that plaintiff was defendants' "guest"; that, in his argument, defendants' counsel: Stated that the "basis of the suit" was that defendant-pilot-Vrooman "deliberately, not negligently, not carelessly, but deliberately risked his own life in taking that plane off the ground"; argued that the plane's occupants were all "friends" and were "all in the same boat," and that Vrooman wouldn't deliberately "take off" with a "missing" motor and "deliberately injure himself or his friends"; that plaintiff and his lawyers "ask you to bring in a verdict which will find `Buzz' Vrooman guilty of deliberately causing this plane to crash and injure himself and his friends." Plaintiff says that his counsel was replying "to the charge that defendants would be `hurt' by a plaintiff's verdict because it would fasten `guilt' on them of `deliberately injuring friends'; that a `just and proper verdict in this case' couldn't and wouldn't `hurt' defendants because `a just and proper verdict doesn't hurt anybody.'"
However, we are unable to see any connection between the argument in question and the argument of defendants' counsel to which plaintiff claims his counsel was replying. *629 Defendants' counsel had said nothing about a plaintiff's verdict "hurting" either Vrooman or both of "these defendants." (Plaintiff's submission required a plaintiff's verdict against both defendants.) In his argument, defendants' counsel had conceded that if Vrooman knowingly "took off" with a "missing" motor, he did so "deliberately"; and his argument was that Vrooman "was in the same boat with the other three gentlemen and wouldn't deliberately risk his own life as well as the lives of his friends in taking that plane off the ground when the motor was missing." Plaintiff's counsel had already answered that particular argument, expressly and at length.[1] He had concluded his answer to that particular argument and had begun to talk about other matters. Note his argument immediately following that set out in Footnote 1: "You gentlemen of the jury are intelligent men and I am sure will arrive at a verdict to pay this man. In conclusion, gentlemen, I say to you that a just and proper verdict is not going to hurt these defendants a particle. A just and proper verdict doesn't hurt anybody. It isn't going to hurt them a particle." (Our italics.) Therein, plaintiff's counsel did not even suggest that a "just and proper verdict" against "these defendants," the one which would not "hurt them a particle," should be denied plaintiff if the jury believed that Vrooman's acts or omissions were negligent but not "deliberate." Nor did plaintiff's counsel again refer to this matter.[2] The argument clearly was not retaliatory.
Plaintiff does not challenge the principles involving "injection of insurance." *630 The Missouri decisions are collected in 27 West's Mo.Dig., Trial. But: "Indeed, no matter what the ground may be upon which it undertakes to act, a trial court is never justified in setting aside a verdict except for error prejudicial to the losing party." Stark v. St. Louis Public Service Co., Mo.App., 211 S.W.2d 500, 505. Plaintiff's position is that the argument was proper and did not, in fact, "inject insurance."
Plaintiff contends that "the argument was simply true." During the reargument of defendants' new trial motion, plaintiff's counsel conceded: "Possibly if I had not added the sentence, `A just and proper verdict won't hurt anybody,' possibly the jury in following the argument might have got the wrong idea from it, but that sentence said to the jury that a just and proper verdict doesn't hurt anybody, which is the truth." In his brief here, plaintiff argues: "Under our theory of jurisprudence, it is axiomatic that justice properly rendered cannot `hurt people'; if we were to go out on the streets and ask layman after layman what does this language mean to you: `a just and a proper verdict in this case won't hurt these defendants a particlea just and proper verdict doesn't hurt anybody,' we are confident the only reply would be: `It means justice doesn't hurt people.'" However, we do not believe that the average layman would say that justice doesn't "hurt" people. Of necessity, the administration of justice requires that people be "hurt"; every "just and proper verdict" inevitably "hurts" the person against whom it is rendered; in the "endless jar between right and wrong," Justice "hurts" the losing party, and a "just verdict" may take away his property, perhaps his liberty or even his life.
In ruling the propriety of argument, a trial judge may determine how the jury might reasonably construe the language used. Often the language itself is so clear that there can be no doubt as to its meaning. However, in many instances, the language may reasonably be said to convey more than one meaning. In such event, the trial judge's determination of the propriety of the argument need not necessarily be based solely on the language itself. The argument may be interpreted by the trial court in its "setting" and against its "background" in short, in the light of the other circumstances of the particular case. In our view, the language instantly involved, considered by itself, might be held to be harmless. Or, as plaintiff says, "innocuous." However, in the light of other portions of the argument of plaintiff's counsel and in the light of plaintiff's counsel's extensive voir dire examination as to insurance matters, the questioned language might reasonably be said to have been improper and prejudicial. Here, in reviewing the trial court's action, we examine the record and, as did the trial court, interpret the argument in the light of the other circumstances shown in the record.
We have hereinbefore and in Footnote 2 quoted all of the argument of plaintiff's counsel after he had concluded his answer to the argument that a plaintiff's verdict was a finding that Vrooman acted deliberately, not negligently. We have also italicized certain language therein, including that which the trial court found prejudicially erroneous. The criticized language was preceded by an expression of counsel's confidence that the jury's verdict "will pay this man." It is followed by a plea for a $25,000 verdict, not "a smaller amount" or "some small amount" in the belief that "the case will be determined sooner," or "will be settled up sooner." There are also the requests that the jury "let us carry on from there" (a $25,000 verdict) and to "let me continue to shoulder that responsibility."
Plaintiff's able counsel must have intended that his wordshis references to "payment" of a $25,000 verdict "in this case" and to "settlement" of a verdict for a less amount, and his suggestions as to his own responsibility for collecting a "just and proper verdict" against "these defendants" which would not "hurt these defendants a particle"convey some idea or ideas to the jury. This language is more than a mere expression of counsel's belief in his ability to collect from "these defendants" themselves *631 a $25,000 judgment "in this case" if the jury returned such a verdict against "these defendants." (We do not rule the propriety of such an argument.) Plaintiff says of the language: "All that was said was, `A just and proper verdict in this case is not going to hurt these defendants a particle.' This statement was immediately followed with the explanation: `A just and proper verdict doesn't hurt anybody.' There is no inference of `insurance' lurking behind the language. Only `conjecture based upon suspicion' plus the fact defendants' counsel knew of the insurance could have made it so."
We are not impressed with plaintiff's argument that "the jury didn't know that an insurance company was interested in the case," and that the trial judge just "suspicioned" that the jury "would in some way `figure out' what the court already knew." "Why should not the jurors understand that the only reason for asking about their connection with an insurance company was that defendant had a policy in the company mentioned indemnifying him against loss sustained by reason of his negligence, * * *?" Rytersky v. O'Brine, 335 Mo. 22, 70 S.W.2d 538, 541.
We believe that, against the "background" of counsel's extensive and detailed questioning or voir dire examination as to insurance matters and "settlements" of claims by insurance companies, no juror could have failed to realize that the two insurance companies named were very much interested in the result of the trial. Against that "background," the language used by plaintiff's counsel was certainly susceptible to an interpretation which clearly "injected insurance in the case." Against that "background," the jury could well have understood counsel to be saying: "Gentlemen, plaintiff is entitled to a verdict for $25,000, one that will pay him for his injuries. A just and proper verdict in this case would be one for $25,000. A just and proper verdict doesn't hurt anybody. A $25,000 verdict is not going to hurt these defendants a particle. A $25,000 verdict in this case will not hurt these defendants because they won't have to pay it. Don't return a verdict for less than $25,000 on the theory that a verdict for less would be `settled' or paid sooner by someone other than these defendants. Give us a $25,000 verdict against these defendants and let us carry on from therelet us shoulder the responsibility of collecting a $25,000 verdict against these defendantssuch a verdict in this case won't hurt these defendants a particle because we will settle with or collect it from either or both of their insurers, the Phoenix Indemnity Company or the Aereo Insurance Underwriters."
Plaintiff cites Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961, as one involving argument of "such an aggravating kind as to require reversal." In that case, wherein there had been no lengthy voir dire examination as to insurance matters, this court said, 119 S.W.2d loc. cit. 967: "It will be noticed respondent's counsel said $50,000 was the sum of money she was entitled to recover, and that the jury should not worry about whom she would collect it from; that they should give her a substantial verdict and leave it to the lawyers in the case to collect it for her. There was only one defendant, the Festus Mercantile Co., * * * and the plain inference was that it had $50,000 liability insurance, and that respondent's attorneys would collect the judgment from the insurance carrier, the Aetna Casualty Insurance Company referred to in the voir dire examination as a company `which writes liability insurance on automobiles and trucks.' Such is appellant's contention, and we think it is justified." Compare also the argument in two other cases cited by plaintiff as cases wherein "the arguments of counsel were of such an aggravating kind as to require reversal": Rytersky v. O'Brine, 335 Mo. 22, 70 S.W.2d 538, 539, wherein the defendant's counsel had informed the jury that there was a "limited" amount of insurance; and Davis v. F. M. Stamper Co., 347 Mo. 761, 148 S.W.2d 765, 770, wherein the plaintiff's counsel had "questioned the members of the panel at some length as to their interest in or connection with" the named insurance company.
*632 In Rytersky v. O'Brine, 335 Mo. 22, 70 S.W.2d 538, 540, we discussed the purpose of permitting voir dire examinations as to insurance matters. We said: That once a plaintiff has exercised his privilege "to make an honest inquiry of the jurors as to their relation to any person directly or indirectly interested in the case as an insurer or otherwise, * * * then the question of liability insurance goes out of the case, as in fact it never was in it, so far as the trial of the case is concerned. * * * No attorney should seek or be allowed to convert his privilege of obtaining information in order to select an impartial jury into a means of plainting prejudicial facts in the minds of jurors so as to render them biased and prejudiced. * * The courts must condemn and prevent, as far as possible, such practice. * * * We can safely say, we think that no plaintiff should be allowed to keep green before the minds of the jury throughout the trial or in the closing argument and after the legitimate purpose of such inquiry has been fully accomplished the fact that the real defendant carries liability insurance and will not have to pay the judgment rendered since a corporate insurer is back of him." (Our italics.)
We hold that the argument in question reasonably could have been construed by the jury as meaning that a judgment based upon a plaintiff's verdict would be paid, not by either or both defendants but by their insurers. It follows that, under the circumstances shown in the instant record, the trial court did not abuse its discretion in sustaining defendants' new trial motion because of the prejudicial effect of the improper argument of plaintiff's counsel.
Plaintiff contends that, even if the argument was improper, defendants' objection came too late to preserve any error. He cites: Gabelman v. Bolt, 336 Mo. 539, 80 S.W.2d 171, 175; Adams v. Quincy, O. & K. C. R. Co., 287 Mo. 535, 229 S.W. 790, 796; Busch v. Louisville & N. R. Co., 322 Mo. 469, 17 S.W.2d 337, 341; Mahaney v. St. L. & H. Co., 108 Mo. 191, 18 S.W. 895, 897; Clader v. City of Neosho, Mo.App., 198 S.W.2d 523, 530; Godsy v. Thompson, 352 Mo. 681, 179 S.W.2d 44, 49. In these cases, the new trial motion had been overruled. Here, the new trial motion was sustained. Failure to make either a sufficient or a timely objection does not prevent a trial court from sustaining a new trial motion for any trial error called to the court's attention in such motion; and where, as here, an appellate court sustains the new trial order on the ground specified by the trial court, the absence of sufficient and timely objection is not fatal. Jones v. Kansas City, Mo.Sup., 76 S.W.2d 340, 341 (argument); Beer v. Martel, 332 Mo. 53, 55 S.W.2d 482, 484 (argument); DeMaire v. Thompson, 359 Mo. 457, 222 S.W.2d 93, 97 (cross-examination); Brooks v. Bernard, Mo.App., 236 S.W.2d 46, 48 (instruction); Noren v. American School of Osteopathy, 223 Mo.App. 278, 2 S.W.2d 215, 218-219 (instructions).
The new trial order is affirmed.
VAN OSDOL and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by LOZIER, C., is adopted as the opinion of the court.
All concur.
NOTES
[1] "I wish this fine young man had a thousand dollars for every time Mr. Thompson (defendants' counsel) said Mr. Vrooman wouldn't deliberately take the plane off the ground with a missing motor. He must have said that twentyfive times. But that is absolutely smokescreen. * * * Mr. Thompson kept complaining and saying that we are charging that he deliberately took the plane up. We didn't charge that he deliberately took the plane up. We charge that he negligently and carelessly took the plane off that runway with the motor missing; that he negligently and carelessly did that, not that he deliberately did it with some suicidal intent. But he has to make that argument that we charge that he did it deliberately, because that is their smoke-screen but Mr. Vrooman let the cat slip out of the bag. * * * I don't charge that Mr. Vrooman deliberately took the plane off with a missing motor but I do charge he was careless and negligent. * * * Compare that testimony with the flimsy smoke-screen testimony they have presented and the idea that we charge he deliberately took the plane off with a missing motor and risked his life, that is not the charge. The charge is that he carelessly took the plane off because he didn't know, because he had his earphones on * * *. He (defendants' counsel) asks you to put yourselves in the place of these men who flew back there together. He said, `If we all fly back there to Notre Dame together, we are in the same boat.' * * * How could they be in the same boat? They (defendants) had the knowledge that the spark plugs fouled and they had trouble with this airplane. If somebody asked you to ride in his motor car and that man is negligent and careless and runs into another motor car and your back is broken and you carry thirty to thirty-five percent disability for the rest of your life, should that be permitted?"
[2] The remainder of his argument was: "When you go to your jury room remember that when nine of you agree upon some substantial verdict, when nine or more of you agree upon it, bring in your verdict. Your verdict can't be disturbed by the court, it can't be disturbed even by appeal. Bring in this $25,000.00 for Richard Phillips and let us carry it on from there. Don't think that if you bring in a smaller amount that the case will be determined sooner. Remember, gentlemen, I have worked long and hard for him. I had to go back to South Bend, Indiana, and took the depositions of everybody I could find to bring you the facts and the evidence. I have labored long and hard to bring you the facts. Don't bring him some small amount, thinking it will be settled up sooner. Let me continue to shoulder that responsibility, as I hope I have shouldered his responsibilities in the past. Richard Phillips will be waiting here for you when you come back from your jury room. You will never hear a thing about this again, but this is his one day in court on something he will carry with him the rest of his life. Thank you." (Our italics.)